CHIEF JUSTICE PRYOR
delivered the opinion op the court.
A number of the citizens of the county of Fayette, desiring the location and construction of .the Cincinnati Southern .Railway through the city of Lexington, executed to the Trustees of that corporation the following obligation :
“ We severally propose and undertake to and with the Trustees of the Cincinnati Southern Railway, that if they will permanently locate and construct their railway through Lexington, Ky., we will pay the sums set opposite our names, in *758 equal installments, at six, twelve, and eighteen months, from the 1st of July, 1873, unto Thomas Mitchell, as trustee, for their use, to be held and applied by him only toward paying the damages, cost, and expenses which shall be incurred by them, or for which they shall become liable, in acquiring the right of way, or lands therefor, and depot-grounds for their railroad in Fayette County; and if said Trustees shall adopt the line of present railroad from Paris to Lexington, and from Lexington to Nicholasville, no part of this fund shall be used except what may be needed for widening the railway to one hundred feet, and the residue shall be refunded. No subscriber is liable for any other than his own subscription. This subscription is a substitute for our former one, conditioned on raising $50,000.”
The appellant, Berryman, together with others, signed this obligation, Berryman agreeing to pay $100. It is alleged in the petition that the subscriptions were made as an inducement for the Trustees to locate and construct the railway through the city of Lexington; that the Trustees accepted the agreement of the defendant, Berryman, and others, made as aforesaid, and did permanently locate the road through Lexington, acquiring the right of way, and the necessary land for depot-grounds, at great expense, and in excess of the amount subscribed, and are now constructing the road in good faith, and with reasonable diligence to its completion; that each of the installments of defendants’ subscription is due and unpaid.
On the hearing below a judgment was rendered in favor of Mitchell, the trustee, and a reversal is'asked on this appeal on two grounds:
1. That the location and completion of the road were conditions precedent to the payment of the money.
2. That such contracts are contrary to public policy, and void.
That the road was located through the county of Fayette *759 and the city of Lexington, and large sums of money expended by the Trustees in procuring the right of way, and securing depot-grounds, are facts not controverted. The road is also being constructed as rapidly as is usual in such undertakings; and the principal question, it seems to us, is, was the action prematurely brought? The acceptance by the Trustees of the ■obligation executed by the appellant, imposed a liability or an undertaking upon their part to locate and construct the road as provided in the agreement; and although the undertaking is mutual, and each should be required to perform his part of the contract, it does not necessarily follow that the completion of the work is a condition precedent to the payment of the money. Whether mutual covenants are dependent or' independent is often a matter of construction, and the intention of the parties in such cases will control. The order of time in which the several acts are to be done, when considered with reference to the subject-matter of agreement, must control the court in determining whether the covenants are dependent or independent.
That the consideration for the agreement to pay the subscription was the location and construction of the railway must be conceded; but in construing the contract, such a construction should be placed upon it as will effectuate the intention of the parties, and accomplish the purposes for which it was entered into. It never was contemplated by the subscribers to the instrument before us that this money should be withheld until the road was finished. At the time of the undertaking the road had not been located. The Trustees, under legislative sanction, had undertaken to build a great line of railway from the Ohio River, opposite Cincinnati, to Chattanooga. Such an enterprise required a large expenditure of money, and would necessarily be in progress of completion for several years, and yet the subscribers to the agreement before us have promised to pay, in equal installments, at six, twelve, *760 and eighteen months from the 1st of July, 1873, the entire amount of their subscriptions, showing clearly that they could not have been relying upon the completion of this great enterprise, even to the city of Lexington, within six months from the date of their agreement. The legislative grant had authorized the Trustees to cause the location of the road, and to accept donations, etc., in aid of the enterprise. The very purpose of this subscription was to enable the Trustees to procure and pay for the right of way, and to secure the proper application of the money. A trustee, Thos. Mitchell, was selected and named in the contract as the party to whom the money was to be paid, and this trustee expressly required to apply it toward paying the damages, costs, and expenses which shall be incurred by them, the Trustees, or for which they shall become liable, in acquiring the right of way or land therefor, and depot-grounds for their railroad in Fayette County, etc.
The subscribers expected to pay this money when due, and had agreed, in effect, that it should be expended within their own county, in discharge of the liabilities incurred by the Trustees in procuring the right of way, etc. Any other construction would defeat the plain intention of both parties to the agreement. It was to enable the Trustees to construct the road through Lexington, and not merely a contract to pay them after the road had been completed. The demurrer to the petition was therefore properly overruled. (Selwyn’s. Nisi Prius, vol. 1, p. 533; Chitty’s Pl. 332; Craddock v. Aldridge, 2 Bibb, 15; 8 Rhode Island, p. 564; North Missouri Road v. Winkler, 8 Missouri, p. 318.)
The second point raised by counsel involves a question of great public interest, and one that must necessarily affect the construction of such improvements, their completion depending often .upon the aid given them by the localities through which they run. It is not pretended in this case that the road has been improperly located, or that the public interest has *761 been in any manner affected by the contract upon which, the recovery is sought. With such a state of facts presented, we see no reason to discuss the question of public policy, as private interest has in no way been advanced at a sacrifice of the public good.
These subscribers have voluntarily assumed a liability from which they must derive some benefit, or, if not, have induced the Trustees of this road to incur an expenditure Avhich might, at least for the time being, have been withheld but for their undertaking.
The cases in which an agreement to pay has been declared void and as against public policy, are those where the officers of the corporation, for the advancement of their own private interests, have agreed to accept a consideration for locating such improvements in a particular locality. In the case of Fuller v. Dame, 18 Pickering, Dame, the owner of the land, promised Fuller, a member of the corporation, a certain amount of money if he would influence the location of the road. This was a mere private agreement between the two, and the court held that it might cause an improper influence to be exerted by the stockholders, and an agreement to pay for its exercise was void.
In the case of Holliday v. Patterson, 5 Oregon, Holliday Avas the president and director of the Oregon & California Railroad Co., and agreed with Patterson, in consideration of a certain sum of money, that he would cause the line of the railway to be located on a particular route, and a depot to be built at a certain place.
In the case of the Pacific Railroad v. Seeley, 45 Missouri, it was agreed to give to the company a tract of land to be divided into toAvn lots for the- purpose of speculation, on condition tha¿> a depot should be built at a certain point. The court held that such speculations were incompatible with the object that brought the corporation into existence. In all *762 these cases there is a plain departure from the object contemplated by the charter, or the facts develop the existence of contracts by which the officers or stockholders of corporations have in some way violated their trust. The trustees in this case were attempting to devise the means for constructing this great line of railway, and were influenced alone by their desire to succeed in the enterprise, from which no private gain is sought, at least by this contract, but the public interest-is sub-served, and the objects of the charter accomplished, in obtaining their contributions in aid of its completion. The interest of the road is alone looked to, without any individual benefit to the trustees, or any violation of their official duties.
In the case of the Cumberland Valley Railroad Co. v. Baab, 9 Watts, 458, the subscription (not of stock) was made on condition that the company would locate its bridge across the river at a particular place. The contract was held to be valid, and not against public policy. A contract to convey real estate to a railroad company for the purposes of the railway, provided it built the road to a certain point and its depot in a certain town, was also held to be a valid contract. (9 Kansas, 377.) Public policy does not prohibit voluntary contributions to railroads for purposes of construction, or render void a contract based upon the consideration that the road will be located in or through a certain locality, unless the public interest is to be sacrificed by it. The prospective business of a road must, to a great extent, control its location; and when the means may be insufficient to complete it, or the advantages to be derived from its location may be insufficient to induce voluntary donations or subscriptions, based upon the consideration that the road will be so located as to confer the benefits, we See no reason for holding such agreements void; but when officers of such corporations, who are also trustees of the public, undertake to receive donations for their own private use, or make contracts by which they are to be paid for using an influence *763 that will or may locate a line of railway in a particular locality, there is a necessity for holding such contracts void; but neither the facts or principles upon which such contracts are held invalid can be made to apply to this case.
The judgment below is affirmed. (State v. Hans, 4 New Hampshire; State v. Johnson’s adm’r, 52 Indiana; 11 Alabama, 755.)