CASE 76—PETITION EQUITY—DECEMBER 9.

| 84 | 565 |
| 100 | 534 |

## Bank of Louisville v. Gray, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. NO PARTICULAR FORM OF WORDS IS NECESSARY TO CREATE A SEPARATE ESTATE in a married woman. It is only needful that an intention to vest the property in the wife to the exclusion of the husband shall

clearly appear. Nor is it necessary, where the wife's right to personal property is based upon a writing, that the paper itself should show an intent to exclude the husband in order to create a separate estate in the wife. The intention may be shown by evidence *aliunde* the writing.

2. THE MERE RAISING OF A TRUST FOR A MARRIED WOMAN MAY NOT CREATE A SEPARATE ESTATE in her as to personalty, but it is at least a circumstance tending strongly to show an intention to invest the wife with the exclusive use of the property.

In this case the wife's portion of the estate of a deceased brother was invested for her by a friend in certain shares of bank stock, and the certificate made out in the name of the husband as trustee for the wife. The husband was absent at the time, but, upon his return, approved the investment, and the dividends were received by the wife, the husband always recognizing the trust. *Held*—That the stock was the separate estate of the wife.

3. A MARRIED WOMAN resident in Kentucky can not execute a power of attorney.

4. A SALE BY AN AGENT TO HIMSELF of the property of the principal is void at the option of the principal, and one who purchases from the agent with notice of the facts holds as a trustee for the principal.

An agent to sell bank stock belonging to the principal had the stock transferred to himself on the books of the bank. The agent afterwards transferred the stock to the bank. *Held*—That the bank is not an innocent purchaser, and holds the stock as trustee for the principal.

5. TRUSTS—ADVERSE HOLDING.—The bank, standing in the attitude of a trustee, can not be regarded as holding either the stock or dividends adversely to the real owner.

6. LIMITATION.—Dividends upon bank stock are payable upon demand; until demanded, the bank holds them in trust for the stockholder; and until then, time does not begin to run against the owner's right to them.

WM. LINDSAY FOR APPELLANT.

1. In determining whether or not the bank stock in controversy is the separate estate of Mrs. Gray, sec. 15 of art. 4, chap. 52, of the General Statutes, does not apply, as the stock was transferred to her while the Revised Statutes were in force; and the certificate held by Mrs. Gray is clearly not within the provisions of the Revised Statutes. (Revised Statutes, chap. 47, art. 4, sec. 16.)

2. The mere fact that the certificate is in the name of the husband as *trustee* for his wife is not sufficient to constitute the stock her separate estate. While apt or formal words are not necessary to create such an estate, the intention to exclude the husband must be manifest, especially where it is claimed that he has permitted her to thus set apart

Bank of Louisville v. Gray, &c.

her general estate. (Bowen v. Sebree, 2 Bush, 112; Penn v. Young, 10 Bush, 628.)

3. The evidence *aliunde* the writing is not sufficient to show that it was intended that Mrs. Gray should hold the stock as her separate estate.

4. The cases of Thomas v. Harkness, 13 Bush, 23, and Mitchell v. Prather, 10 Bush, 117, commented on.

SAME COUNSEL IN PETITION FOR REHEARING.

1. The bank stock in contest was never at any time the separate estate of Mrs. Gray. (Bishop on Law of Married Women, vol. 1, sec. 824; 5 B. Mon., 114; 1 Duvall, 76; 6 Bush, 157; 8 Bush, 395; 2 Met., 508 and 521; Penn v. Young, 10 Bush, 628; Rev. Stats., chap. 47, art. 4, secs. 16 and 17; Petty v. Malier, 14 B. M., 247; Gen. Stats., chap. 52, art. 4, sec. 15; Uhrig v. Horstman, 8 Bush, 172.)

2. Personal property in which a separate use is held may be alienated by the *feme* through the instrumentality of an agent, and especially so when the instrument under which she claims title provides for the transfer by an attorney in fact, duly appointed by the trustee. (Long v. White, 5 J. J. Mar., 530; Duvall v. Graves, 7 Bush 468; Story's Eq. Jur., sec. 1388; Gen. Stats., chap. 52, art. 4, sec. 17; Evans on Agency, Ewell's Am. ed., p. 11; Griffin v. Ransdall, 71 Ind., 440; McLaren v. Hall, 26 Iowa, 297; Wharton on Agency, sec. 11, note 5.)

3. The bank was encouraged to make the purchase by the act of Mrs. Gray in signing the power of attorney, and paid the full market price for the stock, and Mrs. Gray, being a *feme sole* as to this property, if it was separate estate, is, in law and morals, estopped now to repudiate the sale made by Hays, or to question the title she encouraged the bank to purchase.

HAMILTON POPE ON SAME SIDE.

1. To create a separate estate in a married woman, the intention to exclude the husband must be clear; it can not be a matter of inference. Therefore, the bank stock in controversy here was not the separate estate of Mrs. Gray. (Petty v. Malier, 14 B. M., 247; 12 B. M., 328; Perry on Trusts, vol. 2, 647; Hill on Trustees, 407.)

2. Even if the bank stock was separate estate, Mrs. Gray had the power to sell it through an agent. (Long's Adm'r v. White's Adm'r, 5 J. J. Mar., 230; Bell v. Keller, 13 B. Mon., 383; Lillard v. Turner, 16 B. Mon., 376; Perry on Trusts, sec. 654; Reeves on Domestic Relations, chap. 13, p. 162; Gen. Stats., sec. 17, p. 532.)

3. Mrs. Gray, although a married woman, is estopped to repudiate the sale made by Hays, which she authorized by a power of attorney signed by her. To allow her to do so would be to encourage a fraud. (Connolly v. Branstler, 3 Bush, 702; Tom Davis v. Tingle, 8 B. M., 539; Wright

Bank of Louisville v. Gray, &c.

v. Arnold, 14 B. M., 642; Prather v. Weissinger, 10 Bush, 122; Story's Equity, vol. 1, 377.)

4. The action is barred by limitation, not having been brought until more than five years after the cause of action accrued.     (Gen. Stats., chap. 71, art. 3, sec. 2.)

The fact that Mrs. Gray was a married woman, and that the stock was held by another in trust for her, did not prevent the statute from running.  Whenever the right of action on the part of trustees is barred by time, such bar operates to defeat the right of the *cestui que trust*. (Coleman v. Walker, 3 Met., 67; Perry on Trusts, 358-9; Hill on Trustees, 503-4; Barclay v. Goodloe, 83 Ky.)

5. The husband is seeking to recover the stock for his own use, the wife being only nominally a party to the action, and he is estopped.

6. Sec. 15 of art. 4, chap. 52, Gen. Stats., does not apply; but even if the court should hold that it does, Mrs. Gray had the right, with her husband, to dispose of the stock, or to authorize its disposition by power of attorney, which she did.

R. W. WOOLLEY FOR APPELLEES.

1. A power of attorney executed by a married woman resident in this State is void.

2. The bank stock was the separate estate of Mrs. Gray.

*a.* A legacy to a wife in the hands of an administrator can be intercepted by the wife before reduced to the possession of the husband, either by her own act approved by the husband, or by the decree of a court if the husband declines, and whether by her own act or by a decree of court, the legacy will be settled upon her as her separate estate, and neither husband nor creditor can touch it.   (Hays v. Blanks, 7 B. M., 348; Eastburn v. Wells, 7 Dana, 431; Elliott v. Waring, 5 Mon., 342; Campbell v. Galbreath, 12 Bush, 459; Marshall v. Daniel, 8 B. M., 174; Bolling v. Winslow, 5 B. M., 31; Moore v. Moore, 14 B. M., 357; Hord v. Hord, 5 B. M., 83; Campbell v. Campbell, 79 Ky., 388; Wright v. Arnold, 14 B. M., 638.)

*b.* Intention, not words, creates a separate estate.   (Hathaway v. Yeaman, 8 Bush, 391; Hutchinson v. James, 1 Duvall, 75.)

*c.* A gift by the husband of a chattel or chose in action to the wife is separate estate. (Thomas v. Harkness, 13 Bush, 27; Campbell v. Galbreath, 12 Bush, 462; Maraman v. Maraman, 4 Met., 86.)   *A fortiori* it is competent for the husband to give his consent that the wife shall have, as her separate estate, money which she has obtained from a relative.

*d.* Assent of the husband is sufficient to create separate estate.   (Uhrig v. Horstman, 8 Bush, 175; McClannahan v. Beasley, 17 B. M., 114; Edwards v. Miller, 7 Bush, 398; Campbell v. Galbreath, 12 Bush, 459; Marshall v. McDaniel, 8 B. Mon., 174; Bryant v. Bryant, 3 Bush, 156; Bishop on the Law of Married Women, vol. 1, 726.)

3. Husband and wife together can sell the wife's separate estate for the purpose of reinvestment, but they can not sell or mortgage for the purpose of paying antecedent debts of the husband. (Hathaway v. Yeaman, 8 Bush, 391; Hirschman v. Brashears, 79 Ky., 258.)

4. Notice of the trust is notice of the nature of the trust. (Prather v. Weisiger, 10 Bush, 127; Shaw v. Spencer, 100 Mass., 382.)

5. The husband can not assign his wife's chose in action. (Bishop on Law of Married Women, vol. 1, sec. 652; Shaw v. Spencer, 100 Mass., 382; Prather v. Weisiger, 10 Bush, 127; Dunn v. Lancaster, 4 Bush, 582.)

6. The action is not barred by limitation. (Morse on Banking, pages 31, 32, 33 and 427.)·

B. F. BUCKNER on same side.

1. The bank stock and its dividends were the separate estate of Mrs. Gray. (McClannahan v. Beasley, 17 B. Mon., 114; Walton v. Broaddus, 6 Bush, 328.)

2. A married woman resident in Kentucky can not execute any valid power of attorney. A power given to a married woman to alienate does not carry with it any right to delegate that power to another. (Steel v. Lewis, 1 Mon., 48; Summer v. Conant, 10 Vt., 20; Caldwell v. Walters, 18 Pa., 6 Harris, 82; Read v. Jewson, 4 Term Rep.; Graham v. Jackson, 6 Queen's Bench, 811; Eng. Com. Law Rep., 51, 811; Esclava v. Lepetre, 21 Ala., 504; Gillespie v. Warford, 2 Cold.; Butterfield v. Bill, 3 Ind., 203; McDaniel v. Grace, 15 Ark., 465; Bokark v. Pavey, 8 Ohio St., 270; Louis v. Cocks, 5 Harrington, 401; Mott v. Smith, 16 Cal., 533; Bishop on Law of Married Women, vol. 1, sec. 602.)

3. The wife is regarded as a *feme covert* as to all powers of attorney and executory instruments of writing affecting her separate property; the only *conveyances* she may make are such as are expressly provided for by statute. (Peacock v. Moork, 2 Vesey, sr.; Mott v. Harris, 14 Beavan, 170; Aylett v. Ashton, 1 Myl. & Cr., 105; Francis v. Wigzell, 1 Maddocks Ch'y, 145; Uhrig v. Horstman, 8 Bush, 172; Hirschman v. Brashears, 79 Ky., 258; Baird, &c., v. Bruning, &c., 4 Ky. Law Rep., 206.)

4. Under the General Statutes separate estates, so far as the powers of the wife are concerned, stand on the same footing as general estates do by law.

Stuart v. Wilder, 17 B. M., 58, was decided under the Revised Statutes, from which the General Statutes differ upon this subject. (Rev. Stats., chap. 47, art. 4, sec. 17; General Statutes, chap. 52, art. 4, sec. 17; *Ibid.*, chap. 24, secs. 19 and 20.)

5. An agent can not sell to himself the property of his principal, and a sale so made is void at the option of the principal. A person who purchases from such agent, with notice or knowledge of the facts,

holds as trustee for the principal. (Prather v. Weissiger, 10 Bush, 117; Shaw v. Spencer, 100 Mass., 382; Duncan v. Landon, 15 Wall., 171; 2 Story's Eq., 241; Byles on Bills, 225; Deep River Co. v. Fox, 4 Iredell, N. C., Equity, 61; McKinley v. Irvine, 13 Ala., 681; Walker v. 'Palmer, 24 Ala., 358; Banks v. Judah, 8 Conn., 145; Church v. Sterling, 16 Conn., 388; Sturdevant v. Pike, 1 Ind., 277; Mathews v. Light, 32 Maine, 305; Copeland v. Mercantile Ins. Co., 6 Pick., 198; Ingerson v. Starkweather, Walker, Michigan, 341; Moore v. Mandlebaum, 8 Michigan, 433; Moore v. Moore, 5 N. Y., 256; Cumberland & Co. v. Sherman, 30 Barb., 553; Shannon v. Marmaduke, 14 Texas, 247; Segar v. Edwards, 11 Leigh., 213.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Lucy A. Gray, upon the death of her brother, became entitled to a portion of his estate. Her husband, George Gray, being absent, it was, on October 3, 1872, through her friend, invested in thirty-five shares of stock of the Bank of Louisville, and the certificate made out in the name of "George Gray as trustee for Lucy A. Gray." When the husband returned, he approved the investment; and until January, 1875, the dividends were received by her, he always recognizing the trust. The stock stood in his name as trustee upon the books of the bank. At some time not definitely shown, and without the knowledge of the wife, the husband pledged the stock to Thomas H. Hays for a small loan; and thereafter the following power of attorney was executed, the wife being then a resident of Kentucky, and signing it here:

"NEW YORK, January 2d, 1874.

"Know all men by these presents, that I hereby constitute and appoint Thos H. Hays my attorney in fact, for the purpose of selling and transferring thirty-five shares of stock in the Bank of Louisville, in Kentucky,

hereby ratifying and confirming all my said attorney may do in the premises.   Witness my hand,

"GEORGE E. H. GRAY, *Trustee.*

"LUCY A. GRAY."

Upon January 18, 1875, Hays, claiming to have purchased the stock from the husband, had it transferred to *himself* upon the books of the bank; and on April 29, 1876, he, as the attorney in fact of Lucy A. Gray and her trustee, George Gray, transferred it for value to the bank.   This suit was brought on October 17, 1882, after demand, to compel the bank to account to the trustee for dividends upon the stock from the year 1874.

Three questions are presented.   First.  Was the stock the separate estate of the wife?   If not, it is manifest that the judgment for her can not be sustained.   If, however, it was, then, secondly, was the power of attorney valid as to her; and does the bank occupy such an attitude that it can insist upon its purchase?   Third. Under the facts proven, is she estopped from asserting the claim or barred by time?

Separate estate is the creature of modern equity.   No particular form of words is necessary to its existence. It is only needful that an *intention* to invest the property in the wife, to the exclusion of the husband, shall clearly appear.   It may be based upon a writing, or created by parol by a third party.   In the case of a note executed to a married woman, or in the purchase of stocks, it may be shown by evidence *aliunde* the writing, that the creation of a separate estate was intended; and this character need not be imparted to it by the writing which invests her with the right to it.

The paper need not, in itself, show an intent to exclude the husband.

The case now presented is unlike that of Petty v. Malier, 14 B. M., 198, and some kindred Kentucky cases, where it was properly held that where a separate estate is claimed in land under a conveyance, it must be expressed in the deed, or the intention to create it therein shown.

It is urged, however, that the expression of the trust merely, in the stock certificate, without expressing a separate use in the wife, did not create a separate, but merely a general trust estate; and that the husband could, at any time, assert his marital rights and convert the property.

If it be conceded that the mere raising of a trust for a married woman does not alone create a separate estate in her as to personalty, yet it is certainly one circumstance to be regarded in arriving at the intention of the parties, and whether one was in fact created. It is the usual, and was formerly the only, mode of creating one in personalty.

It is not absolutely essential to it, because, although, by the common law, a married woman can not hold the title to personal property acquired by her, but it flows through her into the husband, yet equity, intent upon justice, will treat him as a trustee for her as to it, and thus, if invoked, give her the beneficial use of it. The intervention of a trustee is, however, at least a circumstance tending strongly to show an intention to invest the wife with the exclusive use of the property. Unless so intended, the trust is entirely at the mercy of the husband.

Here, the trust for the wife was created. She, with the approval of her husband, intercepted the estate before it came to his hands, and by raising a trust, which was assented to and recognized by him, settled it upon herself as her separate estate. This was the intention of the parties, and in accordance with it she received the profits of it.

This character having been impressed upon it, the inquiry next arises, whether she has, in any way, lost her right to it.

A power of attorney is a writing of an executory character. At common law a married woman could not execute such a paper. It is essentially the act of one *sui juris;* and the right to do so, if it exists, must be found in the statute. Her right to convey is so derived, as indeed are all her powers.

A conveyance by her must be made in conjunction with her husband and upon privy examination. In the absence of these requisites she is not bound, because the statute has prescribed the particular mode in which she may do it.

There is no statute in this State giving a resident married woman the right to execute a power of attorney. In it she would not convey or acknowledge a conveyance, or be privily examined. She is only authorized by the statute to convey upon privy examination; and the grant of power in this mode must be held to exclude any other. Our statute expressly provides that a non-resident married woman may convey any interest in any real or personal estate which she may own in Kentucky, by an agent under a proper power of attorney; and this implies that the resident can not do it.

We are not to judge whether the absence of this power is the result of wisdom or not. We must construe the statute as we find iv. Nor can we, in Turkish manner, decide, according to the hardship of the case, whether it be one way or the other. "Hard cases make shipwreck of the law." It is proper, however, to say that the object in creating separate estates was not to enable the wife to dispose of her property, but to protect her against the dominion of her husband and to enable her to keep it; and a proper policy perhaps dictates that her power to convey, which has been expressly given to her upon certain conditions, should not be delegated by her to others.

We conclude that the so-called power of attorney was, as to Mrs. Gray, void.

There is another reason, however, why it could not avail the bank. Hays transferred the stock to himself and then to the bank. It knew the character in which he was acting. The trust and his agency all appeared upon its books. It had *notice*. An agent can not sell to himself the property of his principal. He is not allowed to create such an antagonism. Such a sale is void at the option of the principal, and one who purchases from the agent, with notice or knowledge of the facts, holds as a trustee for the principal. The stock appears to have been first pledged to Hays by the husband; and Mrs. Gray is not shown to have received any benefit from the transfer. It is true that, although Hays had already transferred the stock to himself upon the bank books, yet when he transferred it to the bank, he did so as the attorney of the trustee and Mrs. Gray; the certificate showed the trust,

and the bank could easily have ascertained its nature and extent by an inquiry of Mrs. Gray. The act of Hays was a tortious one; and while the bank doubtless acted in good faith, yet the circumstances were such as to charge it with such notice that it became its duty to inquire as to the nature and extent of the trust. No innocent purchaser is involved, or any one holding under any commercial instrument; and the bank is not, therefore, so sheltered.

It does not appear that Mrs. Gray has done any thing to estop her from now asserting her right; nor can the plea of limitation avail.

A bank is a trustee for its stockholders. Its transactions with them are to be closely scrutinized. Its possession is friendly. In this case, however, the bank, as a purchaser, took with notice of the trust—with knowledge that it was purchasing from an agent, who had perverted his agency, and it does not appear that the *cestui que trust* had knowledge of the adverse claim of the bank until shortly before the bringing of this action. Under these circumstances, the bank, standing in the attitude of a trustee for Mrs. Gray, can not be considered as having held adversely to her, either as to the stock or the dividends. The latter, like deposits, are payable upon demand. They do not draw any interest until then; until demanded, the bank holds them in trust for the stockholder; and until then, time does not begin to run against the owner's right to them.

Judgment affirmed.