CASE 84—ACTION BY HENRY P. RALEIGH AGAINST J. EDWARD CLARK
FOR DAMAGES FROM SURFACE WATER.—FEB. 6.

# Raleigh v. Clark.

### APPEAL FROM DAVIESS CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

SURFACE WATER— DRAINAGE OVER LOWER LAND— LIMITATION —
WAIVER—CONTRACT TO MAINTAIN DITCH—BREACH—MEASURE OF
DAMAGES.

Held:  1. Plaintiff and defendant owned adjoining farms; defend-
ant's being higher, and draining over plaintiff's into a creek.
Before plaintiff purchased, defendant had permitted a third
party to cut a ditch through his land, which turned onto plain-
tiff's farm water which would not naturally flow there.  Af-
terwards he agreed with plaintiff to construct and keep open
a continuation of the ditch from plaintiff's line to the creek,
etc.  This agreement was performed for several years. HELD,
that if defendant had acquired the right to maintain the ditch,
as originally constructed by the third party, by limitation,
he waived it by his subsequent conduct.
2. Defendant, whose farm adjoined plaintiff's and drained over
it into a creek, agreed to construct and keep open a ditch from
plaintiff's line to the creek, and afterwards let the ditch fill
up, whereby plaintiff's land was overflowed, and his crops
damaged. HELD, that if plaintiff, by himself cleaning out the
ditch, could have avoided the damage, he was only entitled
to recover from defendant the reasonable cost of opening the
ditch and keeping it open.

MILLER & TODD AND ELI H. BROWN, FOR APPELLANT.

The issues as joined by the parties were:
1. The appellant affirmed that the appellee had constructed a

north and south ditch and other furrows and channels on his own land all leading to appellant's land in which water accumulated and was discharged in large volumes and with great force upon appellant's land to his great damage, etc.

2. That appellee agreed to open and keep open a ditch from the mouth of his north and south ditch across appellant's land to a connection with Knob Lick Creek, and of sufficient capacity to carry off all water flowing from the north and south ditch and to open and keep open one-half of the ditch on their east and west line emptying into the north and south ditch and thence into the creek and thereby to protect appellant's land from the water falling on and flowing across appellee's contiguous land, and that appellee failed and refused to keep either of his undertakings.

This agreement was made some eight or ten years before suit was brought.

It was set up in the pleadings by way of avoidance of the defense set up in the answer that the water flowing from another tract known as the Mattingly land as well as that from appellee's land, flowed through the north and south ditch on appellant's land and that the water from Mattingly's land flowed through a ditch that had existed on the Mattingly land for more than fifteen years, alleging that the ditch on the Mattingly land had been made and connected with appellee's north and south ditch for a consideration paid to and accepted by appellee by the then owner of the Mattingly land, all of which was controverted.

The court instructed the jury that if the ditch leading from the Mattingly land from defendant's land to plaintiff's land had been constructed and maintained continuously for fifteen years or more before the contract between plaintiff and defendant for the continuation of said ditch through plaintiff's land to Knob Lick under a claim of right, that defendant is not liable for damages that plaintiff may have sustained by water flowing through same, though he failed to comply with the agreement to keep the ditch open on plaintiff's land.

We submit that this instruction was error, and forestalled all consideration of the merits and real issues which should have been presented by proper instructions.

SWEENEY, ELLIS & SWEENEY, FOR APPELLEE.

Appellant's whole case is based upon the distinct idea that his crops were damaged and that he sustained injury as the direct result of appellee's failure to keep open the ditches over appellant's land.

Assuming the allegations to be true, can appellant plant crops, cultivate them to a certain extent and then stand by and allow them to be destroyed *simply and only because the ditches over his own land were not kept open by appellee?*

We contend that independent of any agreement between himself and appellee the law would require appellant to open and keep open the ditches on his own land so as to protect his crops from damage and charge the cost in that respect to appellee, if appellee had agreed to do it and had refused or failed to do it.

Appellee contends that he had the right under the law to collect water upon his land in artificial drains or channels in the manner stated in plaintiff's petition, though it might result in the flow of surface water on the lands of appellant more swiftly than it would otherwise flow, because in the very nature of the subject this is an inconvenience to which the inferior proprietor must necessarily submit in view of the inferior nature of his estate.

If this Mattingly ditch was established and has been maintained in its present position for twenty-five or thirty years, as appellant admits, then it follows as a matter of law that plaintiff's cause of action was barred by limitation as set out in instruction No. 5 as given by the court.

There is no claim in plaintiff's petition for any damages on account of water which flows through the Mattingly ditch and it follows that no instruction which the court could have given or might have refused has prejudiced appellant.

### AUTHORITIES CITED.

Am & Eng. Ency., 1st Ed., vol 24, 903; Kemper v. Louisville, 14 Bush, 187; Gould on Water, secs. 267, to 276; 89 Am. Dec., 563; 40 Am. Rep., 519; Vannest v. Flemming, 18 Am. Rep., 387; Hughes v. Anderson, 44 Am. Rep., 147; Johnson v. Owensboro & N. R. R. Co., 18 Ky. Law Rep., 276; L. & N. R. R. Co. v. Orr, 91 Ky., 109.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant and appellee are farmers living on Knob Lick creek, in Daviess county. It is a flat country, and the stream seems to be a sluggish one. Appellant's land is lower than appellee's, and lies north of it, between appellee's farm and the creek. To the west of appellee's land is a tract known in the record as the "Mattingly Land."

The drainage from the Clark and Mattingly tracts, is, by
nature, over the land of Raleigh to the creek, but all of the
Mattingly land does not drain this way.     Many years ago,
Clark allowed Mattingly to cut a ditch through his land,
which turned down on the Raleigh place water that would
not by nature flow there.     This was before Raleigh bought
it.     The ditch seems to have run to a swag near the line,
and there stopped.     The line between Raleigh and Clark
runs east and west.     The ditch referred to runs practical-
ly from south to the north.     Clark bedded up his land as
seems to be customary in that section, and also dug an-
other ditch.     The bed furrows and these ditches took the
water down on Raleigh in greater quantities and more rap-
idly than it would flow on him by nature.     In this condi-
tion of things, after he bought, an agreement was made be-
tween him and Clark by which Clark agreed to extend the
Mattingly ditch from Raleigh's line to the creek, and to
keep it open; and Clark and Raleigh each agreed to dig
a ditch on Clark's land, running east and west on the line
between them, to carry the water coming down off Clark's
land into this ditch, which Clark was to cut out to the creek.
Clark was to dig the ditch on the line on one side of
the Mattingly ditch, and Raleigh on the other side, and
the dirt was to be thrown on the lower side of the ditch.
Clark cut the ditch out to the creek, making it something
like six feet wide and three feet deep.     He and Raleigh
also cut the ditch on the line, leading into this ditch, mak-
ing it four feet wide and two feet deep, and throwing the
dirt on the lower side.     Clark then set his fence on top
of this dirt.     This served as a barrier to protect Raleigh
from the water above, and collect it in the ditches.     Things
went along very smoothly under this agreement for a num-
ber of years.     Finally Clark failed to keep the ditch clean-

ed out across Raleigh's land, which took the water to the
creek; and, when this ditch filled up, the east and west
ditches also filled. Raleigh then brought this suit for
damages against Clark for the flooding of his land. Clark
defended on the ground that Raleigh would not let him
clean out the ditch on his land. He also pleaded limita-
tions, alleging that the Mattingly ditch had existed for
more than fifteen years, and was in existence when Ra-
leigh bought the place. The proof on the trial showed
very clearly that a large amount of water was run over Ra-
leigh's land, and that considerable damage had been done
his crop; but the jury, under instructions of the court,
found for the defendant.

The instruction which is chiefly complained of is in these
words: "If the jury believe from the evidence that the
ditch leading from the Mattingly land over the defendant's
land to plaintiff's land had been constructed and maintain-
ed continually for a period of fifteen years or more next
before the contract or agreement between the plaintiff and
defendant for a continuation of said ditch through the
plaintiff's land to Knob Lick creek (if they believe from the
evidence there was such an agreement), under a claim of
right, then in that event the defendant is not liable to plain-
tiff for any damage that plaintiff may have sustained by
water flowing through said ditch, though he failed to com-
ply with the agreement to keep the ditch open on plaintiff's
land." This instruction was erroneous. The contract be-
tween Clark and Raleigh was admitted by both parties. It
had been carried out by them for a number of years. Af-
ter getting the benefit of this contract, Clark must take it
with the burden. He can not be permitted to say that he
had a right to maintain the Mattingly ditch, for, whatever
his rights may have been, he waived them, rather than take

the chances of standing upon them; and after the lapse of many years, when necessarily the evidence as to whether the ditch was there by permission or as a matter of right has been obscured by time, he can not be allowed to go back now and insist upon a matter which he then deliberately waived.    We understand the petition to be broad enough to recover for all water sent down upon Raleigh in violation of the agreement between Raleigh and Clark, by reason of Clark's failure to keep the ditch open as he agreed to do; and as, under this instruction, the verdict of the jury may, under the evidence, have been for Clark, without regard to the other matters in controversy, appellant is entitled to a new trial.

As the case must go back for another trial, it is necessary for us to determine whether instruction No. 3, which is objected to, properly defines the measure of damages, for it is to the interest of the parties that on the next trial the case may be fairly submitted to the jury.    The thing complained of here is Clark's failure to comply with his agreement and keep open the north and south ditch; also the east and west ditch, which he dug on his own land. The rule is elementary that a party suing for damages from the breach of a contract can only recover such damages as naturally and proximately flow from the breach.    When Clark failed to keep open the ditch across Raleigh's land, Raleigh might have opened it, and recovered the cost of doing the work which Clark had agreed to do, but had not done.    The measure of damages for the non-performance of work of this sort is ordinarily the cost of the work, and not the loss which may result to the other party as a consequence of the work's not being done.    Thus in Miller v. Trustees, 7 Greenl., 51, 20 Am. Dec., 341, the court

said: "The purchaser of perishable goods at auction fails to complete his contract. What shall be done? Shall the auctioneer leave the goods to perish, and throw the whole loss upon the purchaser? That would be to aggravate it unreasonably and unnecessarily. It is his duty to sell them a second time, and, if they bring less, he may recover the difference, with commissions, and other expenses of resale, from the first purchaser. If the party entitled to the benefit of a contract can protect himself from a loss arising from a breach, at a trifling expense, or with reasonable exertions, he fails in social duty if he omits to do so, regardless of the increased amount of damages for which he may intend to hold the other contracting party liable. *'Qui non prohibet, cum prohibere possit, jubet.'* And he who has it in his power to prevent an injury to his neighbor, and does not exercise it, is often in a moral, if not in a legal, point of view, accountable for it. The law will not permit him to throw a loss resulting from a damage to himself upon another, arising from causes for which the latter may be responsible, which the party sustaining the damage might, by common prudence, have prevented. For example, a party contracts for a quantity of bricks to build a house, to be delivered at a given time, and engages masons and carpenters to go on with the work. The bricks are not delivered. If other bricks of an equal quality, and for stipulated price, can at once be purchased on the spot, it would be unreasonable, by neglecting to make the purchase, to claim and receive of the delinquent party damages for the workmen, and the amount of rent which might be obtained for the house if it had been built. The party who is not chargeable with a violation of his contract should do the best he can in such cases, and for any unavoidable loss occasioned by the failure of the other he

is justly entitled to a liberal and complete indemnity."
In 1 Suth. Dam. (2d Ed.) section 88, it is said:    "When,
after a contract has been entered into between two par-
ties, notice is given by one of them that the contract is
rescinded on his part, he is liable for such damages and
loss only as the other party has suffered by reason of such
rescinding; and it is the duty of such other party, upon re-
ceiving such notice, to save the former, as far as it is in
his power, all further damages, though the performance
of his duty may call for affirmative action.   If a person
hired for service for a given term is wrongfully dismissed,
he is entitled to the stipulated wages for the term of his
engagement, if that is his loss.   It is *prima facie* his loss,
but the law imposes on him the duty to seek other employ-
ment, and to the extent that he obtains it, and earns
wages, or might have done so, his damages will be reduced.
See Lewis v. Scott, 95 Ky., 484  (16 R., 49) 26 S. W., 192,
44 Am. St. Rep., 251.   In an action for damages resulting
from alleged defects in the construction of the building so
that the roof leaked and injured the interior work or prop-
erty therein, or for breach of a contract to repair a building
from which similar injuries ensued, or for injury to crops
through default of the defendant in not building or re-
pairing a fence, or his tortious opening of the same, where
the party suffering from the injury is aware of the fact and
the cause, and by a little timely labor and expense the
damage could be avoided, the law imposes the duty on him
to stay the injury, when he is in a favorable situation to
do it, and enforces the duty by confining his redress for
the injury thus avoidable to compensation for the necessary
and proper means of prevention.    The duty in such cases
is not arbitrarily imposed on the injured party and exacted
of him in all cases, to do or amend the work of the other

party, or to finish it, but only when, in view of all the circum-
stances of the particular case, it is a reasonable duty, which
he ought to perform, instead of passively allowing a great-
er damage." In 1 Sedgwick on Damages, the rule is simi-
ilarly stated: "The same principle which refuses to take
into consideration any but the direct consequences of the
illegal act is applied to limit the damages where the plain-
tiff, by using reasonable precaution, could have reduced
them." Section 201. "It is frequently said that it is
the duty of the plaintiff to reduce the damages as far as
possible. It is more correct to say that by consequences,
which the plaintiff acting as prudent men ordinarily do
can avoid, he is not legally damaged. Such consequences
can hardly be the direct or natural consequence of the de-
fendant's wrong, since it is at the plaintiff's option to suf-
fer them. They are really excluded from the recovery
as remote." Section 202. In subsequent sections it is
pointed out that the law requires of the party injured only
ordinary care, and that he is not required to commit a
trespass or go on the plaintiff's land. Sections 221, 225.
The authorities on the subject, as applied to a case like
that before us, seem uniform.

By the third instruction the court, in substance, told the
jury that, if they found for the plaintiff the criterion of
damages was the value of the crops lost by him by reason
of the flooding of the land, or a fair compensation for the
injury to the crops, and the depreciation of the rental value
of the land that was not in crop. The court should have
modified this instruction to the effect that Raleigh could
not recover for any damages which he might have avoid-
ed by ordinary care, and that for Clark's failure to keep
open the north and south ditch on Raleigh's land the meas-

ure of damages would be the reasonable cost of opening the ditch, and keeping it open, in·so far as Raleigh might, by cleaning out the ditch, have avoided the damages complained of.

Judgment reversed, and cause remanded for a new trial.