## VICTORIA W. ZYTKA vs. WALTER L. DMOCHOWSKI.

Norfolk.    November 18, 1938. — December 30, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Equity Jurisdiction*, Accounting, Plaintiff's clean hands, Suit to enforce trust, Laches. *Contract*, Validity. *Limitations, Statute of.*

A woman who placed money in the custody of a man upon his promise that he would marry her, that he would care for it and that it would be saved for their mutual benefit after their marriage, was not precluded, by the mere fact that the parties lived together as man and wife for twenty-six years before the man finally repudiated his agreements, from maintaining a suit against him for an accounting after such repudiation.

Subsidiary facts found by a master as to repudiations by a defendant during temporary quarrels with the plaintiff of the plaintiff's right to money in the defendant's hands, and as to repeated reconciliations of the quarrels, warranted a conclusion that no knowledge of such a complete repudiation as would bar the suit under the statute of limitations was brought home to the plaintiff six years or more before its commencement.

Findings by a master of delays by the plaintiff over a period of years, during which the defendant in temporary quarrels with the plaintiff repudiated agreements which were the basis of the suit and the parties each time reconciled their quarrels, did not bar the suit on the ground of laches, it further appearing that the defendant was not harmed by the delay in instituting the suit.

BILL IN EQUITY, entered with a trustee writ in the Superior Court dated July 28, 1937.

The defendant appealed from decrees entered by order of Good, J.

*A. T. Handverger*, for the defendant.

*M. K. Greenberg*, for the plaintiff.

RONAN, J.    The plaintiff, a single woman, brings this bill for an accounting by the defendant for sums of money given to him from time to time, as she alleges, "on his promise that he would save them for her; . . . that he would deposit the plaintiff's earnings in a bank or banks together with his own earnings; . . . that upon their mar-

riage the moneys so amassed by them in the mingled account or accounts would enure for their mutual marital benefit." The defendant appealed from a final decree ordering him to pay a certain amount to the plaintiff.

The master, to whom the case was referred, found that the parties became acquainted in 1910, in New Jersey; that she was then steadily employed, usually as a domestic, while he did some work; that he joined the army and remained with it for a year; that the parties saw a good deal of each other and after about six months of their acquaintance agreed to marry, but no time was set for their marriage; that the defendant came to Boston in 1911; that, in response to his letter, the plaintiff joined him on October 29, 1911, and they lived together in an apartment in Boston, as husband and wife, until September, 1924, when they moved to a farm in West Medway, title to which was taken in the names of "Walter Dmochowski and Victoria Dmochowski, husband and wife, as tenants by the entirety," where they lived together until shortly before the filing of the present bill; and that he introduced her to his friends as his wife and gave her a wedding ring, which she wore. The master sets forth in considerable detail the wages earned by the parties, the payments made by the plaintiff, and the amounts saved by the defendant. It was found that, in 1923, he had a number of deposits in his name amounting to $14,510, to which she contributed $5,050, "upon his representations, that he was caring for her money and that what she gave him was going into banks to be saved for their mutual benefit when they were married"; that she then brought an action against him for breach of contract to marry; that this action was settled upon terms agreed upon between themselves alone, the defendant paying both counsel and the plaintiff executing a release which was never delivered to him; and that the parties continued to live together, the plaintiff making payments until 1928, and thereafter spending considerable time in assisting in maintaining the farm.

It having been found that payments were made to the defendant by the plaintiff, the principal defence now urged

is that such payments were made in accordance with an arrangement by which the parties lived together as husband and wife from October, 1911, until shortly prior to the commencement of this suit, and that, consequently, the defendant is not liable for an accounting. If the payments were made entirely or partially in consideration that the parties should cohabit, then the plaintiff has no standing to invoke the aid of a court of equity to compel the repayment of the money and she has no rights which are cognizable in equity and, the contract having been executed, the law leaves the parties just where they have placed themselves. *Taylor* v. *Jaques*, 106 Mass. 291. *Wolkovisky* v. *Rapaport*, 216 Mass. 48. *Wolff* v. *Perkins*, 254 Mass. 10. The denial of relief to one party is not on the ground that the other party should be permitted to retain and enjoy the fruits of an illegal bargain, but is based upon the principle that, both being *in pari delicto*, neither is entitled to any consideration. *Otis* v. *Freeman*, 199 Mass. 160. *Berman* v. *Coakley*, 257 Mass. 159. *Szadiwicz* v. *Cantor*, 257 Mass. 518. *Nickel* v. *Fox*, 262 Mass. 170.

Freedom of contract to those engaged in an illegal transaction is not curtailed if exercised for a legitimate purpose, separable from and independent of such a transaction and not so closely connected with it as to be infected or tainted by its illegality. "The illegality of one contract does not extend to another contract unless the two are united either in consideration or promise." *Higgins* v. *Fitzgerald*, 266 Mass. 176, 179. *Tremont Trust Co.* v. *Brand*, 244 Mass. 421, 425. *Bauer* v. *Bond & Goodwin Inc.* 285 Mass. 117, 120. The plaintiff cannot recover for services ordinarily rendered by a wife in maintaining the home and in performing the usual household duties, *Robbins* v. *Potter*, 11 Allen, 588 (see *Cooper* v. *Cooper*, 147 Mass. 370; *Ogden* v. *McHugh*, 167 Mass. 276), but she is not to be deprived of her rights as a creditor for money entrusted to the defendant, where illicit relations formed no part of the consideration. *Robbins* v. *Potter*, 98 Mass. 532. Williston, Contracts (Rev. ed.) § 1745. Am. Law Inst. Restatement: Contracts, § 589.

The master found that payments were made by the

plaintiff relying upon the defendant's promise of marriage and, after their marriage, for their mutual benefit. There are no findings to the effect that the payments were dependent upon a continuance of their cohabitation. The ultimate findings of the master are consistent with and supported by the subsidiary findings, and we cannot disturb them. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, and cases cited. The defendant, in violation of the terms under which he received the money, refuses to recognize the interest of the plaintiff and claims the money as his own. The receipt of the money having been shown, he is obliged to account to the plaintiff. *Moore* v. *Mansfield*, 248 Mass. 210. *Jameson* v. *Hayes*, 250 Mass. 302. *Cram* v. *Cram*, 262 Mass. 509.

The defendant next contends that the plaintiff's suit was barred by the statute of limitations. The statute, however, would not commence to run until there had been a definite repudiation by the defendant of the conditions under which he held the plaintiff's funds. *Davis* v. *Coburn*, 128 Mass. 377, 380. *Currier* v. *Studley*, 159 Mass. 17, 20. The master found that, subsequently to 1928, there were frequent quarrels between the parties, during which the plaintiff asked for her money and the defendant contended that it belonged to him. His refusal to recognize her rights, expressed upon such occasions, would warrant a finding that his statements were uttered in the heat of argument and did not represent his mature and final judgment. These occasions were transitory, of short duration, and were soon followed by a resumption of their former relations. The conclusion of the master, before whom both testified, was: "I think I am warranted in drawing an inference that she did not follow up her demands, neither did he maintain his attitude, in other words, after each quarrel the parties buried the hatchet and lived along as before until the next outbreak and so I find." It could have been found that the plaintiff might have been justified in believing, until shortly before she commenced the present suit, that the defendant would marry her and hold the money for their joint benefit and,

in the light of the further facts disclosed in the report, we cannot say that the master was wrong in his conclusion that "I do find that under all the circumstances there was no such knowledge brought home to the plaintiff or repudiation of trust by the defendant as would cause the commencement of the period of the statute of limitations more than six years before the bringing of this action." The repudiation made during the quarrels could not be found to express his definite and final determination to hold the money for his own exclusive use and as his sole property. They temporarily composed their differences, and, for reasons best known to themselves, neither insisted upon a final determination of the contentions concerning the respective rights of each in the money. The subsidiary facts found by the master support his finding that there was no adequate repudiation of the trust more than six years prior to the commencement of this suit. *Campbell* v. *Whoriskey,* 170 Mass. 63. *Pierce* v. *Perry,* 189 Mass. 332. *Stuck* v. *Schumm,* 290 Mass. 159. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431.

The defendant excepted to the master's report because the master failed to make certain requested subsidiary findings of fact, and he presented with this exception a written request for a summary of the evidence relative to certain of these findings; he also excepted to the report on the ground that the findings of the master were inconsistent. These exceptions cannot be sustained. The evidence was not taken by a stenographer approved by the master. See Rule 90 of the Superior Court (1932); *Raymond* v. *Stone,* 246 Mass. 421; *American Agricultural Chemical Co.* v. *Robertson,* 273 Mass. 66. The refusal to recommit the master's report and to require a report of the evidence relative to certain findings shows no abuse of discretion. *Chamberlain* v. *Henry,* 263 Mass. 63. *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479.

Upon the facts reported, the plaintiff was not barred by laches, especially when it does not appear that the defendant was harmed by the failure of the plaintiff to assert her rights sooner. *Cram* v. *Cram,* 262 Mass. 509. *Jek-*

*shewitz* v. *Groswald*, 265 Mass. 413. *North Easton Cooperative Bank* v. *MacLean*, 300 Mass. 285.

The final decree must be affirmed with costs.

*Ordered accordingly.*