KESSLER et al. v. JEFFERSON STORAGE
CORPORATION.

JEFFERSON STORAGE CORPORATION
v. KESSLER et al.

Nos. 9083, 9084.

Circuit Court of Appeals, Sixth Circuit.

Jan. 16, 1941.

John E. Tarrant, of Louisville, Ky. (D. A. Sachs, Jr., John E. Tarrant, and Ogden, Galphin, Tarrant & Street, all of Louisville, Ky., on the brief), for H. M. Kessler, trustee, et al.

David R. Castleman, of Louisville, Ky., for Jefferson Storage Corporation.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

From partial allowance of a claim filed by the Jefferson Storage Corporation against the bankrupt estate of Dant & Dant of Kentucky, a corporation, the Trustee in Bankruptcy, the storage company, and another creditor, appeal.

The Dant corporation was a distillery whose president was M. C. Ganellin. On December 14, 1936, the corporation, through Ganellin, entered into a storage contract with the Jefferson company. At the same time, the Jefferson company executed a contract with Ganellin, providing for the payment to him of certain profits which the Jefferson company was to realize from the storage contract with the Dant company.

It is claimed by the Trustee in Bankruptcy that the Dant company was ignorant of the execution of the contract between the storage company and Ganellin with regard to payment to him of a share of its profits; that it was a fraudulent, secret agreement; and that, because the storage

contract was a part of the same transaction, the whole was tainted with fraud and the storage contract was void. It is therefore contended that the claim in bankruptcy of the Jefferson company, which is based upon the storage contract, should be entirely disallowed.

█ On behalf of the Jefferson company, it is claimed that, at the time of the execution of the profit agreement with Ganellin, the directors of the Dant company, by corporate resolution, gave approval thereto and were fully advised of its terms. The resolution in question, however, was in indefinite language. It did not mention the contract provisions with regard to profits; and the directors of the Dant company—other than Ganellin—testified they had no knowledge whatever that such profits were to be repaid to Ganellin. The District Court affirmed the findings of the Referee that the agreement as to profits was fraudulent. In spite of uncertainty on this question, arising from the complicated dealings and obscure relationships leading up to the transaction and in the dealings between the two corporations and various individuals, on a review of the record, we are of the opinion that there was substantial evidence to support the conclusion of the District Court.

█ In its determination, the court found, however, that the Dant company ratified the storage contract with full knowledge of all essential facts. It appears that the Board of Directors of the Dant company, after the execution of the contracts, authorized an audit, and were advised on July 27, 1937, by the auditors, of the terms of the so-called secret agreement. Thereafter, until the ensuing bankruptcy on June 21, 1939, the Dant company recognized on its books its liabilities to the Jefferson company according to the terms of the storage contract. Storage was continued thereafter; storage charges were paid; and no complaint or objection was made during any of this period by the Dant company to either of the contracts. When Ganellin discontinued his association with the distillery in June, 1938, he wrote to the Jefferson company, notifying it that he had assigned to the Dant company all of his rights under any contract which he had with the Jefferson company. The latter promptly advised the Dant company of receipt of notice of this assignment, although there appears to be no record that the Dant company answered such communication.

During the period between the time the Dant company had received notice of the so-called secret agreement and the date of bankruptcy, the Dant company carried on an extensive correspondence with the Jefferson company with reference to storage arrangements, based upon the assumption that the storage contract continued to be in effect. If the transaction were voidable, the foregoing circumstances are amply sufficient to show an affirmance by the Dant company.

But it is contended that the secret profit contract was void for fraud, and that the storage contract, being a part of the same transaction, was also void, and incapable of ratification.

█ It is a well established rule that a contract against public policy cannot be made valid by ratification; and it has been said that where the object or tendency of a contract is to constitute a breach of duty on the part of one who stands in a confidential or fiduciary relation, it is illegal and void, as tending to be, or being, a fraud on third persons. Meguire v. Corwine, 101 U.S. 108, 25 L.Ed. 899; Forsyth v. Woods, 11 Wall. 484, 485, 20 L.Ed. 207; Horbach v. Coyle, 8 Cir., 2 F.2d 702; Davezac v. Seiler, 12 Ky.Law Rep. 599; Young v. Evans, 8 Ky.Law Rep. 353. Not only is it stated that such agreements are against the public policy of securing faithful discharge of duties by persons holding positions of trust and confidence, but agreements tending to cause unfaithful conduct by fiduciaries are illegal because they are, in effect, agreements to wrong or defraud persons whose interest the fiduciaries have in charge; Maine Northwestern Development Co. v. Northern Commercial Co., D.C., 213 F. 103; and contracts which tend to induce an officer of a corporation to act unlawfully or in disregard of the interests of the corporation, are of this nature and are invalid. Wardell v. Union Pacific R. Co., 103 U.S. 651, 26 L.Ed. 509; Horbach v. Coyle, supra; Berryman v. Cincinnati Southern Ry., 14 Bush. 755, 77 Ky. 755.

Ganellin's contract with the Jefferson company, that he was to be repaid from its profits, which were to be realized from payments made by the company of which Ganellin was president, was found to be a fraud upon the Dant company. The trial court held that the entire transaction, consisting of the storage contract and the profits agreement, was voidable, rather than void, on the ground that where a con-

tract is made by an agent, in the name of his principal, in which a secret profit, not known to or acquiesced in by the principal, inures to the agent, it is voidable on the part of the principal upon discovery of the facts, citing Wardell v. Union Pacific R. Co., 103 U.S. 651, 26 L.Ed. 509; Thomas, Trustee, v. Brownville, etc., R. Co., 109 U.S. 522, 3 S.Ct. 315, 27 L.Ed. 1018; Bank of Louisville v. Gray, 84 Ky. 565, 2 S.W. 168; Johnson v. Mitchell, 192 Ky. 444, 233 S.W. 884; Louisville Point Lumber Co. v. Thompson, 202 Ky. 263, 259 S.W. 345. See Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L.Ed. 328; Hoyt v. Latham, 143 U.S. 553, 12 S.Ct. 568, 36 L.Ed. 259. Appellant trustee urges that the cases relied upon by the court are inapplicable; and insists that the entire transaction was void and could not be ratified.

We are required, however, only to decide whether the storage contract was valid. It is held that where the consideration of a contract is valid and several promises are based upon it, some of which are legal and others illegal, so that they may be separated, the legal ones will be enforced, while those which are illegal will not, and the illegality of the latter will not prevent the enforcement of the former; and where an agreement which is founded on a legal consideration contains several promises, or a promise to do several things, and certain of the things to be done are illegal, that part of the promises which can be separated from the illegality, may be valid. The rule is that a lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time, and for the same consideration. Stratton, Adm'r, v. Wilson, 170 Ky. 61, 185 S.W. 522, Ann.Cas.1918B, 917. If the obnoxious feature of a contract can be eliminated, without impairing its symmetry as a whole, the courts will be inclined to adopt this view as the one most likely to express the intention of the parties. Newport Rolling Mill Co. v. Hall, 147 Ky. 598, 144 S.W. 760. Where there are contained in the same instrument, distinct engagements or covenants, by which a party binds himself to do certain acts, some of which are legal and some illegal, the performance of those which are legal may be enforced, although the performance of those which are illegal, may not. Smith v. Corbin, 135 Ky. 727, 123 S.W. 277. See Farmers' Bank v. Bass, 218 Ky. 813, 292 S.W. 489. The illegality of one contract does not extend to another contract unless the two are united, either in consideration or promise. See Zytka v. Dmochowski, 302 Mass. 63, 18 N.E.2d 332, 120 A.L.R. 470.

In this case, it is unnecessary to proceed to the point of considering the severability of legal and illegal parts of a contract in order to give effect to the legal covenants. Assuming the profit agreement to be void because of the fraudulent, secret arrangement between Ganellin and the Jefferson company, there appears to be no principle compelling the holding that the storage contract between the Dant company and the Jefferson company is likewise fraudulent and void. The stipulations in the two contracts are entirely different. The consideration for their execution is also different. If it be conceded that the profit agreement was absolutely void, the storage contract cannot be held ineffectual on the ground that it, too, was void ab initio, because infected by the fraudulent profit agreement. As hereinafter appears, the storage contract was advantageous in its terms to the Dant company. It provided storage for half the prevailing cost. The Dant company was innocent of any fraud. It was not a party to an illegal contract; the contract between the Dant company and the Jefferson company was entirely legal. The promises of the parties constituted a legitimate consideration, and were sufficient to support their mutual covenants. The Dant company could not be deprived of its rights under such a contract, legal in its terms and purposes and for its benefit, simply because, at the same time, a disloyal corporate officer attempted to profit for himself by means of a contract of which the Dant company had no knowledge. The mere fact that the relationship of such person to the Dant company gave him an opportunity to perpetrate a fraud by means of a secret agreement with the Jefferson company (with which the Dant company had no connection, and the consideration of which formed no part of the contract between the Jefferson company and the Dant company), does not have the result of vitiating all contractual relations between these two companies. The two contracts were not indivisible; the covenants of each were separable from the other. Doubtlessly, under slightly different facts or changed circumstances, the fraud affecting the one contract would be inseparable from the other, with the result that both would be tainted by the same evil; but we do not find such

to be the case in this controversy. In accordance with the foregoing, we are in agreement with the conclusion of the trial court sustaining the storage contract.

On the basis of the agreement, the District Court allowed the claim of the Jefferson company, at a reduced amount, from the time of the execution of the contract to the date of bankruptcy. The Jefferson company contracted to provide storage to the Dant company for a minimum of 60,000 barrels. The Dant company agreed to guarantee a minimum storage payment of $3,000 per month. Although the contract provided for storage at the rate of 10 cents per barrel per month, it was agreed that when the minimum of $3,000 had been paid, the Jefferson company would repay to the Dant company 5 cents per barrel per month on all liquor stored. Claimant seeks allowance on the basis of the minimum agreed payments under the contract. We agree with the District Court that the cost of storage to the Dant company was only 5 cents per barrel per month, and the agreed minimum of $3,000 per month was in consideration of the reservation of space for 60,000 barrels. However, the storage company did not have sufficient capacity for the storage of 60,000 barrels, but only for 41,796 barrels. At the rate of 5 cents per barrel, such guaranteed payment, within the intent of the parties, as evidenced by the contract, would amount to $2,089.-80 per month; and the determination of the District Court to this effect was correct.

It is claimed that the court erred in denying allowance of the claim of the Jefferson company for prospective damages for the remainder of the contract which, by its terms, extended for a period of five years beyond the date of bankruptcy. The court held that the burden was upon claimant to prove mitigation of damages and that, failing to do so, it must be assumed that the contract value and the market value of the storage space reserved by the bankrupt, were the same. In executory contracts covering a period of time in the future, it is the duty of the party whose contract has been broken to take reasonable steps to minimize his dam-

ages. Fruit Growers Express Co. v. Citizens Ice & Fuel Co., 271 Ky. 330, 112 S.W. 2d 54; United States Bond & Mortgage Corp. v. Berry, 249 Ky. 610, 61 S.W.2d 293; McFall v. Carroll, 194 Ky. 678, 240 S.W. 367; Nortonville Coal Co. v. Sisk, 145 Ky. 55, 139 S.W. 1086; Raleigh v. Clark, 114 Ky. 732, 71 S.W. 857; Lewis Co. v. Scott, 95 Ky. 484, 26 S.W. 192, 44 Am.St. Rep. 251. It appears that the prevailing rate for storage of whisky in the locality in which claimant's storage company is situated, is 10 cents per barrel per month. The contract with the Dant company provided for payment of only 5 cents per barrel per month. While it is true that claimant's storage facilities were not adjacent to a distillery, and might thereby bring a lower rate for storage of liquor from other distilleries, and while it might also be necessary to install certain bottling facilities, nevertheless, it seems reasonable to conclude that, even under these circumstances, it could furnish sufficient storage at a rate that would reduce its damages or save it harmless from loss as a result of the termination of the Dant contract. Certainly, it is incredible that its premises could not be put to any use whatever.

In this regard, it is important to observe that in bankruptcy proceedings, the claimant has the burden of liquidating its claim as a condition precedent to its allowance. 11 U.S.C.A. § 93, sub. d. Furthermore, the claimant in bankruptcy has the burden of proving its claim. Connecticut Railway & Lighting Co. v. Palmer, 2 Cir., 109 F.2d 568, affirmed Palmer v. Connecticut Railway & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. Plaintiff did not sustain the burden of showing the difference between the market value of the storage space and that agreed to be paid, as expressed in the contract. In the absence of proof, it must be assumed that the contract value and the market value of the storage space, reserved by the bankrupt, are the same. Palmer v. Connecticut Railway & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. The disallowance of prospective damages was proper.

The judgment of the District Court is affirmed.