## Caldwell & Drake v. Cunningham.

(Decided January 21, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Sales—Of Personal Property—Rights and Remedies of Purchaser after Delivery in Case of Disagreement as to Contract.—When no definite contract has been made for the sale of personal property and there is disagreement between the seller and the buyer as to the terms of the contract pending which the property is delivered, the buyer has the right to reject it or to accept and use it as he intended, but if he adopts this latter course with knowledge of the difference between himself and the seller as to the price, he must pay the price charged and cannot defeat the claim of the seller by insisting that he bought the property on different terms or at a different price.

2. Sales—Rights of Purchaser After Delivery When There Is a Difference as to Contract Price—Case Stated.—"C" negotiated with "C" and "D" for the sale of lumber, but no definite contract as to the price was agreed on, "C" understanding that he sold at one price and "C" and 'D" understanding that they purchased at another price. While this condition existed, "C" shipped the lumber to "C" and "D" with an invoice stating the price as he understood it. "C" and "D" objected to the price but used the lumber. When "C" and "D," under these circumstances, accepted and used the lumber, their use was an acceptance of the price charged by "C." It was the making of a new contract between the parties.

EUGENE R. ATTKISSON for appellants.

A. E. WALSH and KINNEY & THOMAS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Cunningham, was a dealer in lumber, and the appellants, Caldwell & Drake, were contractors and builders. Desiring to purchase some oak flooring for a courthouse they were building, Caldwell & Drake entered into negotiations with Cunningham to furnish the flooring. Following some preliminary talk concerning the quality and price of the flooring, and on May 27, 1911, Cunningham wrote Caldwell & Drake a letter in which he said he could furnish clear oak flooring at $99 per thousand feet and select flooring at $69 per thousand feet, and that the flooring would run about 20% select and the remainder clear.

After this, on June 23, 1911, Cunningham sent to Caldwell & Drake, from Louisville, Ky., to Lebanon, Indiana, where the flooring was to be used, samples, and in this letter said that the samples contained 80% of the clear grade and 20% of the select, and this would represent the flooring that he would send. On June 28th Caldwell & Drake wrote that they would accept the flooring according to the samples submitted, and thereupon Cunningham shipped them a carload of the flooring. At the same time he sent them a bill or invoice of the shipment, which stated on its face that the price for the clear flooring was $99 and the select $69.

A few days after this Caldwell & Drake wrote Cunningham that they were very much surprised at the charge for part of the flooring being $99, as, according to their understanding, it was all to be furnished at $69. In answer to this Cunningham replied that he did not see how there could be any misunderstanding about the price of the flooring, as his letters and invoice showed the cost. After this, and on August 15th, another carload of flooring was shipped, accompanied by an invoice showing the quantity and description and that the price was $99 for clear and $69 for select.

Caldwell testified that in the preliminary negotiations with Cunningham it was distinctly understood that they could not pay more than $69 for flooring, and the contract was closed on this basis. He admitted, however, that both carloads of the flooring were used by his firm after they had received the bill and invoice for each carload, which showed that the price of the clear was $99 and the select $69.

Caldwell & Drake having refused to pay more than $69 for the flooring, this suit was brought by Cunning-

ham to recover the difference between $69 and $99 for the clear flooring.

After an answer had been filed setting up the defense as we have indicated, the case went to trial before a jury, and when all the evidence had been heard the trial judge directed a verdict for Cunningham, and this appeal is prosecuted by Caldwell & Drake questioning the correctness of this ruling on the ground that as there was an issue of fact as to the contract price of the flooring, this issue should have been submitted to the jury.

An issue was made by the evidence of Cunningham, upon the one hand, and Caldwell, upon the other, as to whether the price of the flooring was as claimed by Cunningham or as claimed by Caldwell & Drake, and it is evident, from the testimony, that Cunningham believed that they were to pay $99 for the clear and $69 for the select, and that Caldwell & Drake believed they were getting all of it at $69. There being this misunderstanding between the parties as to the terms of the contract before the flooring was shipped, the question for decision is, did the acceptance and use of the flooring by Caldwell & Drake after they knew from the invoice and bills the price charged for it by Cunningham, conclusively bind them to pay the price he charged?

If we should assume that Caldwell & Drake fairly understood that the price of the flooring was $69, the letters that passed between the parties after the bill and invoice for the first car of flooring had been received and before it had been used, put it beyond dispute that Caldwell & Drake knew that Cunningham's price was $99 for the clear and $69 for the select. With this knowledge before them at a time when none of the flooring had been used, we think that Caldwell & Drake, if they did not desire to pay the price charged by Cunningham, should have declined to use the flooring until the difference between them was adjusted in some satisfactory way; but that, having used it, they must pay the price charged.

The question presented in this case is not by any means a new one, and we think the authorities are quite uniform in holding that, under circumstances such as are shown in this case, Caldwell & Drake could not use the flooring and then refuse to pay the price for which Cunningham claimed he sold it.

In Kerr v. Smith, 5 B. Mon., 552, Smith sold the Kerrs a lot of tobacco. The Kerrs accepted the tobacco, but, insisting that the quality was not what it was represented to be by Smith, refused to pay the contract price. In holding that the Kerrs had no right to accept the tobacco and fix a price upon it lower than the price fixed by the terms of the contract, the court said:

"Having received the tobacco, though it may have been of inferior quality to that required by the contract, they have no right afterwards to raise objections or refuse to pay for the same, according to the stipulations of their contract. They should have refused to receive it, if it did not come up to the contract, or if they had permitted the first two loads to be taken from the wagon and placed under shelter in their factory, they should have laid it aside and immediately notified Smith that they would not receive it under the contract, and that he need send no more; in which event Smith would have been left at liberty either to dispose of the tobacco elsewhere or to agree to deliver it under a new contract with the defendants, or to tender it under his existing contract, as coming up to its terms and quality, and demanding from them the receipt of it as such, and in case of their refusal to remove it, reserving his right to make them responsible for a breach of their contract."

This case differs from the one at bar in the respect that in this case it appears there was a contract between Smith and the Kerrs as to the price and quality of the tobacco, and the tobacco did not correspond in quality with the terms of the contract of purchase. But the principle announced by the court is that the buyer, if goods do not come up to the contract or his understanding of the contract, must either reject them or, if he accepts them, pay the seller's price. To the same effect are Duff & Oney v. Rose, 149 Ky., 482; Jones Brothers v. McEwan, 91 Ky., 373; Vogel v. Moore, 27 Ky. L. R., 94.

In Estey Organ Co. v. Lehman, 132 Wis., 144, 11 L. R. A. (n. s.), 254, the controversy arose about the price of an organ purchased by Lehman. As stated in the opinion, it was established by the evidence that Lehman believed he was to pay for the organ $1,750, while the organ company supposed it was to get $2,300 for it and understood it was selling it for that price. It was, therefore, apparent that the minds of the parties never

met upon the price before delivery of the organ. When the organ was shipped the organ company sent to Lehman an invoice showing the price to be $2,300. Upon receipt of this invoice Lehman wrote stating there was a mistake as to the price, but, notwithstanding this, he retained the possession of the organ; and, in holding that he must pay the price at which the organ company understood it was sold, the court said:

"The defendants having received and retained the property with knowledge of the price plaintiff expected to receive, and without any agreement, express or implied, for a different price, they cannot escape payment of the price stated in the invoice. * * * The minds of the parties not having met upon the price prior to the time the property was received by defendants at Houghton, Michigan, it was their duty, when they received it with knowledge of the price, to refuse to accept it, unless they were willing to pay the price stated in the invoice. Having taken the property and converted it to their own use, they became liable to pay such price, which the evidence establishes was the regular selling price, and a reasonable price." To the same effect is Cunningham Manufacturing Co. v. The Rotograph Co., 30 App. D. C., 524, 15 L. R. A. (n. s.), 368.

When there is disagreement and misunderstanding, as in the case before us, between the seller and the buyer as to the terms of the contract, and the property is delivered before this is settled, the buyer has the election to reject or to accept and use it as he intended, but, if he adopts this latter course, with knowledge of the difference between himself and the seller as to the price, he must pay the price charged, and cannot defeat the claim of the seller by insisting that he bought the property on different terms or at a different price. He has made his election and is bound by it.

If Cunningham and Caldwell & Drake had entered into a contract as to the price at which the flooring was to be furnished, and the terms were understood and agreed to by both parties, we do not think that Caldwell & Drake would be obliged, as a matter of law, to pay a higher price than the contract price merely because they used the flooring after receiving the invoice accompanying the flooring which showed that Cunningham was charging a higher price than the contract price; nor do we hold that, under such a contract, it would be proper for the court to take the case from the jury.

But this is not the case we have. It is clear, from the evidence, that the parties had not agreed on the price. The terms of the contract had not been closed when the flooring was shipped; but when Caldwell & Drake received the bill or invoice for the flooring and definitely understood from it the price charged by Cunningham, and, with knowledge of this price, accepted and used the flooring, their acceptance and use of the flooring was also an acceptance of the price charged by Cunningham. It was the making of a new contract between the parties. It was, in effect, the same as if Cunningham had written them that he would furnish the flooring for $99 for clear and $69 for select, and they had written him that they would accept his proposition.

Under the evidence, we think the court correctly ruled the case, and the judgment is affirmed.