## Clay, et al. v. Thomas, et al.

(Decided March 4, 1921.)

### Appeal from Clark Circuit Court.

1. Appeal and Error—Acceptance of Voluntary Settlement.—The acceptance of a voluntary settlement of a judgment will not bar an appeal where the judgment is not for the full amount sought; the

rule is different where there is a valid settlement of the cause of action.

2. Executors and Administrators—Claims of.—Where it is provided by will that the allowance fixed therein for services of the executors and trustees shall be in lieu of all other compensation, in their capacity of both trustees and executors, the trustees and executors are not entitled to further or additional compensation, although the estate is very large and their services, covering a period of several years, were very arduous.

3. Trusts—Recovery of Losses Sustained in Operation of Trust Property.—Two trustees purchased trust property under judgment in ex parte proceeding, and later sold the property at a greatly enhanced value. This sale was set aside under judgment of court, holding that the proceeds of the second sale inured to the benefit of the entire estate. Under the belief they were bona fide holders of the entire estate these trustees, who were also children of the testator, operated at a loss a mill, in connection with the estate: Held, they were entitled to any loss sustained by them in the operation of the mill up to the time of the second sale and for a limited time thereafter.

4. Trusts—Warranty Covenant.—In the sale of property previously purchased by two trustees from their trust estate they executed to their grantees a general warranty deed; it was later held that the proceeds of this sale inured to the benefit of the entire estate. While said trustees are not entitled to compensation because the salable value of the property was enhanced by their general warranty those who participate in and reap the benefits of the enhanced value will be compelled to execute bond to indemnify the grantors against any liability that might arise on account of the general warranty covenant.

5. Trusts—Liability of Trustees as Co-obligors in Sale.—Generally speaking, where a purchase of trust property by trustees is set aside, the successful litigants are entitled to judgment against the trustees as co-obligors for their proper share of the proceeds of the sale of the trust property, but where by the terms of the deed the purchase price is payable to the grantors in the proportion to which their several interests appear, one of the trustees having died, those objecting to the purchase by the trustees not being compelled to accept the sale price will, if they elect so to do, be held to have adopted the provisions of the deed and must abide by the terms of payment as fixed by the parties in the collection of their judgment.

T. E. MOORE, JR., and BEN WILLIAMS for appellants.

B. R. JOUETT, PENDLETON & BUSH, JOHN R. ALLEN and E. S. JOUETT for appellees.

OPINION OF THE COURT BY JUDGE·QUIN—Affirming and reversing in part on both original and cross appeals.

James M. Thomas owned considerable property in Rockcastle and Jackson counties. He died testate in 1905, leaving surviving him two sons, W. R. and R. L. Thomas, and two daughters, Mrs. T. E. Moore and Mrs. Mary Thomas Ireland; three of these children have since died leaving descendants.

The two sons and a son-in-law, Thomas E. Moore, Jr., were appointed executors and trustees of the will. An *ex parte* proceeding was filed by the trustees and others interested, seeking authority to sell decedent's property to the two sons. A judgment granting the relief sought was entered and the property was sold to the two sons, who agreed to pay for the interest of each sister $47,500.00, or at a valuation of $190,000.00 for the entire property. Within three years after their purchase the two sons disposed of the property for over $400,000.00

This suit was filed by Mrs. Ireland and the children whose interests had been sold to secure their proportion of the profits realized by the purchasers, on the ground that the trustees had no authority to sell to themselves individually the trust property. This court, in an opinion reported in 178 Ky. 199, 198 S. W. 762, sustained the petitioners, and held that the sale of the property would be treated as a sale by the trustees to inure to the benefit of all. The lower court was directed to ascertain the exact sum actually collected from the sale and the amount, if any, still due. A deduction was ordered for such expenses, if any, as were incurred in effecting the sale, or in perfecting titles, also for the amount of taxes paid by the purchasers after they acquired the property, these sums to be credited on the purchase price, with interest, the balance to be prorated among those entitled thereto, the Moore children and Mrs. Ireland to be charged with $47,500.00, which had been previously paid them.

Upon the return of the case supplemental pleadings were filed, proof taken, an accounting had and judgment entered.

Complaining the lower court failed to follow the mandate of this court in many important matters, and for other alleged errors, Mrs. Ireland, her two children and the Moore children have taken this second appeal. T. E. Moore, Jr., is the only surviving trustee.

A motion by appellees to dismiss the appeal was passed to a hearing on the merits. This motion was based on a previous settlement of the judgment. After entry

of the judgment below executions were issued and these were withheld pending a conference between counsel. On the day appointed the judgment was paid and the executions endorsed satisfied. Undoubtedly it was considered by some that this settlement or payment would be taken as a finality and no appeal would be taken, nor is any reflection cast on counsel because they so understood it. On the other side it is said that counsel then representing appellants were not authorized to make any settlement prejudicial to the rights of their clients, one of whom was an infant. It is apparent those attending the conference at which the money was paid held different views as to the effect of their negotiations.

Civil Code, section 757, provides in part that

"  .  .  .  when a party recovers judgment for only part of the demand or property he sues for, the enforcement of such judgment shall not prevent him from prosecuting an appeal therefrom as to so much of the demand or property sued for that he did not recover."

Construing this section of the Code, we held in Hendrickson v. New Hughes Jellico Coal Co., 172 Ky. 568, 189 S. W. 704, that an endorsement of satisfaction of the judgment, interest and cost on the margin of the order book did not preclude an appeal by plaintiff. See also Cravens v. Merritt, Jr., 178 Ky. 727, 199 S. W. 785.

The acceptance of a voluntary satisfaction of a judgment will not bar an appeal when the judgment is not for the full amount sought. A contrary rule prevails where there is a valid settlement of the cause of action. Under the state of the present record the satisfaction of the executions did not bar appellants' right to appeal.

Appellants claim the judgment is erroneous in several respects. These we will take up in the order of their presentment, and then discuss the items involved on the cross appeal.

1. An allowance of $16,000.00 to the trustees for making the sale. After making certain devises and bequests, testator in clause 11 of his will provided that the residue of his property, with the exception of the property in Jackson and Rockcastle counties, was given to his trustees to hold in trust for the benefit of his four children according to certain directions therein contained. Among other things, that they should operate the lumber plant at Ford, Ky., until the logs and standing timber on the Kentucky river could be manufactured and sold, but

for a period not longer than three years after his death, and the trustees were given general power to manage and control said business. With the exception of the property in Rockcastle and Jackson counties the will provided that the trustees should take testator's other property not specifically disposed of, with the general directions to reduce same to cash as soon as this could be done to advantage. Among other things, the trustees were to pay the taxes upon all the property, including the Jackson and Rockcastle lands, until the Ford property was sold and then distribution was ordered of the proceeds.

In clause 12 the Jackson and Rockcastle properties were given equally to his four children to be held, managed and disposed of by the three trustees named in paragraph 11, being the two sons and son-in-law heretofore mentioned, the same not to be sold until the expiration of at least three years after his death, with the right on the part of the trustees to postpone the sale until as much as ten years after his death.

Clause 16 reads as follows:

"For their services as trustees each of said trustees named in paragraph eleven, and their successors, shall receive an annual allowance of six hundred dollars.

"And in as much as it will be necessary for my son, Robert L. Thomas, to give his entire personal attention to the business, because of his actual familiarity therewith, I desire, in consideration of his doing this, that he shall receive as compensation therefor the additional sum of $1,200.00 per annum. It is understood that the allowance herein provided for shall be in lieu of all other compensation to said trustees in their capacity of both trustee and executor and cease with the three year period."

The executors and trustees received the compensation for the three years provided by the last mentioned clause.

Appellees claim the trustees were compelled to expend much time and energy in disposing of this property, clearing titles, keeping off squatters, etc., etc., and for their services for consummating and completing the deal and disbursing the money they were entitled to a sum in addition to that mentioned in clause 16.

The property consisted of approximately 20,000 acres, covering an area of some thirty-one square miles, and was situated about twelve miles from a railroad. The lower court ordered an allowance to the executors of $16,000.00, but on cross appeal they are asking that it be

fixed at $25,000.00. It is their contention that testator particularly arranged for additional compensation for these services. It is argued that testator specifically excluded from the operation of the trust in clause 11 the Jackson and Rockcastle properties and provided the term the Ford plant should be operated, and in fact they were named as special trustees for a different purpose in clause 12; that the two paragraphs create separate and distinct trusts; this is on the theory that no allowance or compensation was fixed for the trustees named in paragraph 12. It is admitted that the trustees referred to in the two clauses are the same. Furthermore it is said the trustees were to render no service and do nothing with the Rockcastle and Jackson county property until three years after the testator's death, except, of course, the payment of taxes, and as it was impossible to fix with any degree of accuracy proper compensation for services to be rendered under paragraph 12 none was in fact fixed, and hence the insistence that an allowance should be made of not less than $25,000.00 for the services so rendered. A vast amount of work was done by the trustees, including the care of and attention to the property, keeping it clear of squatters, looking after pending litigation affecting the property, as well as the clearing of titles and the work incident to the final sale.

T. E. Moore, Jr., one of the trustees, found the purchaser. He is counsel for the appellants and not only is not asking any allowance for the services so rendered by him, but is resisting any allowance to the trustees other than that fixed in clause 16. But for the provision of clause 16 it could not be satisfactorily contended that the trustees were not entitled to adequate compensation for the arduous duties they were compelled to perform in the care, management and control of this vast area of land. But we find it impossible to escape the positive instructions of testator found in this clause. In the language of the will, "It is understood the allowance herein provided for shall be in lieu of all other compensation to said trustees in their capacity of both trustee and executor, and to cease with the three year period."

We must assume testator meant exactly what he said in his carefully prepared will. It was his manifest intention that, aside from the compensation fixed for the services rendered for the three year period as provided

in clause 11, the trustees and executors were not to receive other compensation for any services rendered by them. They were not compelled to accept the trust and their acceptance of it must have been in accordance with the provisions of the will. In the appointment of his two sons and his son-in-law as executors and trustees testator doubtless had in mind that they represented the recipients and beneficiaries of practically three-fourths of his large estate, and it was not his desire or wish that Mrs. Ireland's remaining one-fourth should be charged with any fees or commissions for any services rendered by them. He evidently reasoned they would be glad to render these services free of charge or cost to their sister, his aim being to make them equal in the distribution of the proceeds of this, the largest item of his estate. The ultimate result of allowing additional fees or commissions to the trustees would be that Mrs. Ireland alone would be the one to pay, charged as she would be with her one-fourth. We are satisfied testator had no such intention; indeed he very positively expressed himself to the contrary. To make a charge against the estate each would be chargeable with his or her one-fourth, and to the extent that any allowance on this account should be made it would in reality affect only Mrs. Ireland. To disallow this item enhances the estate to that extent, and since Mr. Moore has waived his claim to any commission it follows that Mrs. Ireland is relieved of a charge of one-fourth, or $4,000.00, and the net sum payable to the estate of the two sons is decreased only a little more than $1,000.00. We think the lower court erred in making any allowance to the executors and trustees on this account.

2: $8,190.00, discount deducted from the purchase money. Objection is raised to this item allowed by the lower court. It is argued the purchase money notes which were discounted were as good as government bonds, and there was no reason for discounting same. In discounting these notes the executors did nothing more than would have been done by them or any other good business men in the conduct of their own affairs. Many considerations might justify the holders of notes in discounting them. As no good reason is pointed out why this allowance should not stand it will not be disturbed.

3. $5,000.00 allowance to J. W. Fowler. Fowler was an employee of the Ford Lumber & Manufacturing Co. on a nominal salary. While so employed he made pur-

chases of land for W. R. and R. L. Thomas, individually, and likewise performed various services for the estate of decedent. He seems to have been familiar with the entire property; he knew all the corners; he went over the land with the purchasers, and spent several days with the attorneys in going over the titles after the sale of the property had been agreed to, as likewise going on the property with surveyors, representing the purchasers. That he rendered very valuable services is conceded. He went over the land to see if any depredations had been committed; he either surveyed or assisted in surveying the lands when purchased, and seems to have had general supervision over the property. The objection to this allowance is not so much to the amount, as it is to the apportionment of same, it being contended the major portion of his services were rendered for the Thomases or the Ford plant, and not for the estate, but the evidence satisfies us that Fowler did render a considerable amount of valuable services for the estate and the allowance of $5,000.00 is not excessive and should be sustained.

4. Allowance of $4,500.00 to Fowler for salary and expenses. Item 3 was an allowance for special services rendered by Fowler in caring for the land until it was disposed of. Item 4 represents a nominal salary he received and his general expenses. As in the preceding item we think this allowance was within reasonable limits. The salary was for a period of over three years, the amount of which is not objected to, and for the reasons given as to item 3 we do not think the court erred in allowing this sum.

5. Allowance of $4,000.00, interest on items of expenses incurred before the second sale. While there was no specific exception to this item, we find no ground to disallow it. Since the court has held that the sale inured to and for the benefit of all the children the court very properly allowed interest on the items paid by the Thomases until the final disposition of the property.

6. $15,100.00, depreciation in the Livingston Mill property. This mill site, with approximately 150 acres, was located in Rockcastle county, and some distance from the Jackson county lands. This property was included in the original purchase by the Thomases, and was authorized by the judgment in the *ex parte* proceedings. The Jackson county lands consisted of about twenty thousand acres, valued at $170,000.00, and the Livingston

mill site at $20,000.00, a total of $190,000.00, these being the valuations according to the evidence in the *ex parte* proceedings, and upon which Mrs. Ireland and the heirs of Mrs. Moore were paid their one-fourth. The Livingston mill property was not included in the sale of the Jackson county lands, hence no part of the proceeds of that sale was distributed among the heirs. The $15,100.00 allowed by the court was arrived at by deducting from the original purchase of $20,000.00 the sum of $2,000.00 received from the sale of a house on the property and $2,900.00 insurance. The lower court was evidently of the opinion that as the Thomases had paid $20,000.00 for the mill site they were entitled to have that amount returned to them, less the amount realized from the sale of the house and the sum collected on the insurance, but in so holding it seems the court erred. At most the Thomases only paid $10,000.00 for the mill property, being the one-fourth interest of their two sisters, as they paid nothing to themselves. The lower court's judgment directed that the amounts due Mrs. Ireland and the estate of Mrs. Moore should be charged with the sum of $47,500.00 which had been paid by the two brothers under the first sale. This being true the estate of the two Thomases would receive credit for the full amount paid by them, hence they would not be out anything on the deal. Why allow the Thomases $20,000.00 when they had only paid $10,000.00, or why $10,000.00 if they receive credit for the sum so paid? The mill property belongs to the estate and in the event of sale the proceeds should be equally distributed according to the terms of the will. It follows the Thomases are not entitled to any credit on this account.

From the sale of the house and the insurance all but $1,000.00 retained by R. L. Thomas was put back into the business, accordingly his estate should be charged with this amount. On the counterclaim appellees are asking an additional allowance of $20,900.00 on account of the operation of the Livingston mill. This is composed of two items: First, the sum of $17,000.00 which, it is claimed, the Thomases lost in the operation of the mill; second, the remainder is the net amount received from the sale of the house and insurance, with the exception of the $1,000.00 retained by R. L. Thomas. Appellees contend it was the desire of testator that this property should be operated in connection with the Jackson county lands

after his death, the same as it had been during his lifetime, and that its operation in fact added to the salable and marketable value of said property; that for this reason and no other was the property operated, and as the court set aside the deed to all the property, including the Livingston mill, appellants cannot reap the benefits or proceeds of the sale of the Jackson county property and not submit to a charge for the loss growing out of the operation of the Livingston mill; if the deed was void for one purpose it was void for all, and appellants must accept the losses as well as the profits. There is much merit in this contention, but the state of the record is such that it is impossible to tell how much of the alleged loss was sustained in the operation of the Livingston mill until it was sold to Ritter, etc.

Upon a return of the case the court will make inquiry into this matter, permitting the parties to introduce such proof on this matter as may be desired. If the mill property was operated subsequent to the sale to Ritter, etc., which seems to have been the case, the estate is not chargeable with any losses after said date excpt those incurred in the prudent operation of the mill incident to the disposition of the logs and other supplies theretofore provided for. The Thomases or their estates are entitled to reimbursement or credit for such loss as may have been sustained on account of the operation of the Livingston mill up to the sale to Ritter, etc., and the subsequent period above referred to, because they were in good faith operating the plant under the belief they were the owners of it as well as the landed estate. If they were holding the other property as trustees for the estate a like result would follow in regard to this property.

This disposes of the items involved on the original appeal.

We will now consider those on the cross appeal. (a) Appellees are asking that credit be entered for $15,000.00 as the amount of taxes payable since 1912 on the one-half of the proceeds of sale belonging to appellants. This amount is based on the idea that the state and county rate for the years involved was one dollar on each one hundred dollars of taxable value and one and 50/100 dollars as the average rate for city taxes in the state. It is said that Lexington, where appellees lived, is known to be much higher than the average city in its tax rate.

We are impressed with the novelty of this claim, especially that part forming the basis upon which it is sought to fix the amount of the liability. If appellees paid taxes on the amount stated this is and was a fact capable of exact proof, and none is offered. Loss of the tax receipts would not offer an excuse for failure of proof. It is said appellees used this money as their own in connection with other money, but they do not show what, if any, taxes they paid thereon. This claim cannot be allowed.

(b) Claim for $15,000.00 additional on account of interest on items of expense before the second sale seems to have been waived.

(c) Included in the total acreage conveyed to Ritter and associates was a considerable area owned individually by the Thomas brothers. Appellants contend this is 2,553.24 acres, appellees insist it is 3,200 acres. The difference is caused by contradictory statements in the depositions of T. E. Moore, Jr.

The court fixed this item at 2,637.61 acres. The total purchase price of $473,170.15 for something over 23,000 acres is figured on the basis of $20.66 2-3 per acre. The lower court allowed on this account $54,507.24.

In giving his second deposition Mr. Moore says he had not seen the original deed for about five years, at the time he first testified, that he had since found he made some errors in stating the acreage sold. In the second deposition he fixes it at 2,553.24 acres. The deed from the Thomases to Ritter, etc., did not specify which of the tracts conveyed were owned by the Thomas brothers, but from the derivation of title and examination of the deed books the witness said he ascertained the total acreage owned by them. Eleven of the twelve tracts mentioned include 2,428.09 acres; the acreage of one, the Lear tract, is not given. The witness on cross-examination conceded an omission of 147 acres from one tract. This admission, the unstated acreage in the Lear tract, and the further fact that in some instances the conveyance was for so many acres more or less, leads to the conclusion the lower court fixed the exact acreage as near as could be under the evidence.

(d) $50,000.00, enhancement in the value of the property by reason of the general warranty deed executed by the Thomases. The last and largest item made the basis of the counterclaim is that of $50,000.00, claimed as

the enhanced value of the property due to the general
warranty deed executed by the Thomas brothers. The
Thomases when they purchased the property received
only covenants of special warranty. The lower court ad-
judged that appellants were responsible and liable to ac-
count to appellees for their proper proportion of any loss
that might be sustained growing out of the general war-
ranty clause in the deed to Ritter, etc.

It is testified the purchasers would not have taken
the property in the absence of a general warranty deed,
and there is much proof in the record that this character
of deed added considerably to the salable value of the
land. Appellees do not base their claim upon the mere
right to be indemnified, but insist they should receive
credit for the amount to which the value of the property
was enhanced by reason of the general warranty cove-
nant. This position is not without merit. When appel-
lees sold this land after their purchase from appellants
in order to effectuate a sale they were compelled to exe-
cute a deed of general warranty. This deed was made
by them individually under the belief that the sale to them
under the order of court was valid. Therefore, upon the
resale of the property, appellants incurred no responsi-
bility for the marketability or warranty of title, nor did
they join in the deed.

It is conceded that had appellants not asked for a rati-
fication of the sale and a distribution of the proceeds
they might, with propriety, question the reasonableness
and legality of this claim. Only a part of the consider-
ation of the sale of the land was paid in cash; deferred
payments extended over a period of seven years. The
grantee was given power under the deed to deduct for
any loss of the land conveyed. Of $40,000.00 retained in
non-negotiable notes but $10,000.00 was held as a security
for any loss under the warranty. The activity shown by
the purchasers in their use of the property, the cutting of
timber, building of railroads and switches, would have a
tendency to stir up any hostile or probable claims during
these eight years of their occupancy, but the record does
not show the pendency of any such claims or suits.

Unquestionably the general warranty deed added to
the value of the property—an enhancement that inured
to the benefit and profit of appellees to the extent of one-
half. The Thomas brothers could not have been com-
pelled to incur an individual liability on account of this

warranty. They voluntarily assumed it under the mistaken belief the property belonged to them. This court held the deed voidable and that the sale to Ritter, etc., would be treated as having been made by the Thomases as trustees. They made no effort to be relieved of their individual liability under the warranty, nor can they under the circumstances maintain their counterclaim for the added value of the land brought about by the warranty.

However, the burden of the responsibility growing out of the warranty should be borne alike by all. We doubt if the method adopted by the lower court is a sufficient protection to appellees. This can only be done through the execution of bond in an amount not exceeding one-half of the purchase price with interest, by which appellees will be afforded proper protection and indemnity for their warranty. Upon the return of the case and in the settlement thereof the lower court will see that such a bond within reasonable limits as to time and amount is executed.

From the gross proceeds of the sale of the property the court made certain deductions and found that the shares of Mrs. Ireland and the Moore children amounted to $159,608.41. Adding certain items of interest and crediting them with amounts previously paid the net amount due Mrs. Ireland's trustee is fixed at $29,974.11, and a like sum due the Moore children.

In the distribution of the proceeds the share due the estate of W. R. Thomas was paid one-third each to his widow, Carrie Hanson Thomas, his daughter, Ethel T. Rounsavall, and his son, Hanson Thomas. The share due Robert L. Thomas was retained by him.

The judgment accordingly directed that the amount due Mrs. Ireland's trustee and the Moore children be paid one-half by the executors of R. L. Thomas and one-sixth each by Mrs. Carrie H. Thomas, Mrs. Ethel T. Rounsavall and Hanson Thomas. In so doing it is said the court erred, the contention being that appellees are co-obligors, and the estate of each of the Thomas brothers is chargeable with and liable for the entire amount of the judgment. The importance of this point is pressed with great earnestness because of the fact that Hanson Thomas is shown to be insolvent. No objection is made to an order of contribution as between appellees for their proportion of the judgment, but as to those entitled to recover it is said they should not be limited to certain

appellees for stated amounts, that on the contrary the estates of the Thomas brothers are liable for the entire amount of the judgment. Generally speaking the rule contended for is correct.

But whether a trust obligation and its resultant liability is several or joint depends largely upon the facts. In the present suit the sale to Ritter, etc., was approved and a settlement was asked upon the basis of the proceeds of that sale. Before the execution of the deed to Ritter, etc., W. R. Thomas died intestate, hence under the law of descent his widow and children took his interest in the land. In 1912 R. L. Thomas and the widow and heirs of W. R. Thomas conveyed the land to Ritter, etc., and it was provided in the deed that payments should be made one-half to R. L. Thomas and one-sixth each to Mrs. W. R. Thomas and her two children and the purchase money was paid accordingly. While the deed to the Thomas brothers was set aside appellants elected to stand by the deed from the Thomases to Ritter, etc. Appellants were not compelled to accept the conditions of sale as fixed by that deed, but having elected so to do they must abide by its terms. Those terms were agreeable to the grantors. In accepting the sale price appellants acquiesced in the method of payment adopted by the parties.

It is evident appellants were satisfied the property brought a good price, at least they were unwilling to risk a resale. With full knowledge of the terms of the sale they adopted them as their own, therefore they cannot complain because the court prorated the judgment in exact accord with the terms of the deed. This disposes of all the items questioned on the original and cross appeals.

For the reasons herein given the judgment appealed from will be affirmed and reversed in part on both the original and cross appeals as herein indicated. As to the item of loss incurred in the operation of the Livingston mill, up to the time of the sale to Ritter, etc., the case will be reversed for the purpose of allowing the parties to take such further proof as they may desire, with instructions to the court to enter judgment for such an amount as appellees may show themselves entitled to on this account.