## Louisville Point Lumber Company v. Thompson, et al.

(Decided February 26, 1924.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, First Division).

1. **Principal and Agent—Principal May Repudiate Contract for Purchase of Agent's Property as that of Another.**—In purchasing timber from land of which he was a joint owner, an agent purchased his own property, and upon discovering that fact his principal could repudiate the contract and sue at law for deceit or in

equity for rescission upon equitable principles without regard to the fairness or unfairness of the contract or whether or not loss or injury resulted.

2. Fraud—Damages for Actual Fraud Same as for Constructive Fraud.—At common law the measure of damages for constructive fraud is the same as for actual fraud.

3. Cancellation of Instruments—Sales—Cancellation Applies to Executed Contract—Parties must be put in Statu Quo.—The equitable remedy of cancellation is applicable to executed or partially executed contracts, but, if the purchased article has been delivered and possesses any value, the general rule is that the remedy may not be invoked unless the purchaser returns the article or offers to do so, and the parties may be placed in statu quo.

4. Sales—Purchaser Waived Objection to Quantity and Quality by Acceptance.—A buyer, having received, re-inspected, and accepted and used timber, cannot be heard to say that it did not ascertain its quantity and quality, and must be deemed to have waived all objections to such matters.

5. Principal and Agent—Crediting Sellers with Value at Time of Discovery of Fraud does Not put in Statu Quo.—Where agent, who was joint owner of land from which he purchased timber for his principal, concealed that fact from the latter, the principal had a right to disaffirm the entire contract upon discovering his agent's connection therewith, notwithstanding it had accepted and retained the timber, but, where it had used it and could not return it, it cannot put the sellers in statu quo by crediting them with the value of the timber at the time of the discovery of the fraud; it appearing that the market value declined, and that there was no actual fraud in the contract.

6. Principal and Agent—Seller Knowingly Participating in Transaction with Agent Constructively Fraudulent as to Principal Should Not Obtain Secret Profits.—Where real estate firm were joint owners of land with agent of plaintiff, and the agent bought timber from the jointly owned land for plaintiff, the same rule that denies secret profits to the agent should be applied to the real estate company, where it knowingly participated in the transaction, and it is not entitled to profits on logs purchased from other lands in which the agent had no interest; the whole forming one continuous transaction.

HUMPHREY, CRAWFORD & MIDDLETON and GEORGE D. CALDWELL for appellant.

THOMAS C. MAPOTHER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming in part, reversing in part.

The Louisville Point Lumber Company, referred to herein as the "company" or the plaintiff, is a corpora-

tion engaged in the manufacture of lumber in the city of Louisville. One Headden was for several years its agent at Obion, Tenn., being paid the sum of $1.50 per M. feet for such logs as he purchased, scaled and accepted for it at railway stations in that section, though he devoted only a part of his time to its service. In January, 1920, the company contracted with him for his entire time and raised his commission to $2.50 per M. feet. He claims that it also agreed to furnish him an automobile for his use in its service, while it contends that at his request it agreed to purchase one for him and advance the payment thereon, for which he is indebted to it.

In February Headden entered into negotiations for the purchase of a large number of ash logs, notifying it of the price, character and terms, and that other parties were wanting to buy them, and wiring to know if it would take them, the company answering in the affirmative. He thereupon prepared written contract in accordance therewith; this was executed by the sellers, Thompson and Parks, and he forwarded it to Louisville, where it was executed by plaintiff. This contract was dated March 1, 1920, and was a purchase of not less than 200,-000 nor more than 400,000 feet of ash logs, commercial grade, sound timber, 10″ in diameter at top and larger, at price of $100.00 per M. feet, f. o. b. on cars at Miston, Tenn., freight rate, to be measured, branded and received by it through its agent, Henry M. Headden, each week as delivered at points on railroad; 75% cash to be paid on inspection and balance when logs were delivered on cars, the delivery to begin immediately and to continue to September 1, 1920.

There was a delay in beginning the work and the first delivery was not made until July, the bulk of it being delivered the latter part of August. The logs were received, measured and branded by Headden, who forwarded tally sheets therefor to plaintiff, 285,000 feet being thus received.

Ash timber advanced in value for several weeks, but began to decline in July and continued to decline during the latter part of the summer and fall, until there was practically no demand for it. However, the company received the logs as delivered without complaint of any kind and sawed them into lumber. The condition of the

market affected the financial situation of the company, which, though amply solvent, was unable to meet all the cash payments and in lieu thereof gave trade acceptances, some of which were renewed by notes.

In the month of February, 1921, it was owing $3,000.-00 in renewal notes which had been negotiated to a local bank and there was over $4,000.00 balance on the contract due Thompson and Parks, who were insisting on payment.

About that time it was informed that Headden was a partner in the firm of Thompson & Parks, and after investigation and some discussions which proved fruitless, it filed this suit against them and Headden, service being had on Thompson in the city of Louisville, and the other defendants entering their appearance thereto.

It, in substance, alleged in the petition that Thompson, Parks and Headden were partners, doing business under the firm name of Thompson & Parks, and as such partners made the sale in question; that Headden fraudulently concealed this fact from plaintiff and thereby induced it to enter into the contract; that he continued to fraudulently conceal that fact during the entire time of the transaction, and thereby not only sold his own timber to plaintiff, but also inspected, measured and received same; that he was the only agent it had in Tennessee and that it relied implicitly on him to advise .it of the values of timber in that section and to guard its interests in the matters mentioned; that by reason of such actings and doings it had been grievously wronged and defrauded. It admitted that it had accepted and retained all the timber and manufactured the same into lumber, but alleged that all of this occurred before it discovered the fraud perpetrated upon it, and that while it could not tender a return of the logs in specie, a fair equivalent of this could be had by crediting defendant with the value of the logs at the time of the discovery of the fraud, or at the time of their delivery to it, which it alleged to be less than $50.00 per M. It prayed for a rescission and for a recovery of the consideration paid by it, $23,832.63. to be credited by the timber it received at $50.00 per M., $13,724.47, the net balance sought being $10,108.16.

Thompson & Parks controverted the allegations of the petition and made their answer a counterclaim and

sought a recovery against it for the unpaid balance due them on the contract, $4,912.34.

Headden filed a separate answer in which he traversed the allegations of the petition and pleaded affirmatively that plaintiff owed him a balance of $2,845.00 for commissions on this and other purchases for which he asked judgment. By reply plaintiff traversed the counterclaim of Thompson & Parks and in a separate pleading practically admitted the correctness of the items in Headden's account but denied liability for commission on the 285,000 feet of timber in question, to-wit: $723.91, and charged him with the price of the automobile and accessories amounting to $874.95, leaving a balance of $1,193.85, which it admitted owing him, this being controverted by a rejoinder.

It appears in evidence that J. F. Thompson and E. W. Parks for a number of years had been engaged as partners in the business of logging, milling and trading in live stock under the firm name of Thompson & Parks and that Headden had no connection with that firm except in this instance, but that in February, 1920, he and Thompson & Parks purchased a tract of timber land containing 800 acres for the sum of $50,000.00. Headden had no money and the others had to advance the cash payment, and later on the 25th day of June, 1920, Headden executed to them a deed of trust for his interest to secure them in the advancements made by them, and both of these deeds were recorded on the 25th day of June, 1920, but the purchase was consummated while the negotiations for the sale of the timber were in progress. From the above and other evidence there seems to be no doubt of the ownership of the land, and that as to it as well as to the timber taken therefrom, the parties were jointly interested either as partners or co-tenants. Of the 285,-000 feet of timber furnished under the contract, 190,000 feet came from this land, 60,000 feet from the land of E. W. Parks and the remainder was purchased by Thompson & Parks.

While there is some conflict as to the value of the timber at the place of delivery and time of purchase, the overwhelming weight of the evidence is to the effect that the reasonable market value thereof at that time and place equalled the purchase price, and numerous instances are cited by the various witnesses of as high or higher prices being realized for like material under similar circumstances, both at and after that date, it being

further shown that plaintiff had three buyers operating in different states seeking hardwood; that ash lumber was extremely high; number 1 grade selling as high as $350.00 per M. in the winter and spring of 1920, and that plaintiff at that time was anxious to purchase such logs, though all parties agree that the price of ash logs dropped below $50.00 per M. in the next fall and winter.

Also there was some evidence that there were 2,300 feet of logs under 10″ in diameter and about 15,000 feet of culls, but, as stated above, all were received in Louisville and accepted, retained and used without objection or criticism either as to quality or grading. It further appears that as late as November 23, 1920, the plaintiff's president wrote Headden complaining about the material purchased from a Mr. Clerc in which he said: "All of the stock which you bought in that territory averaged out all right, but Clerc's logs have always been short," hence there is no well grounded complaint as to the inspection or grading of these logs. In this respect it might also be said that neither of these items was pleaded.

The chancellor was of the opinion that Headden was a partner in the timber transaction and rescinded the contract, giving plaintiff a judgment for the consideration paid, this, however, to be credited by the value of the timber at the time of the purchase, which he fixed at $85.00 per M. He also deducted from Headden's counterclaim the amount of his commission on this deal and charged him with the automobile, giving him judgment for the balance, $1,193.85. Plaintiff appealed and the other parties filed cross-appeals.

Summarizing the questions of fact and referring to the legal principles involved, it appears: Headden was a joint owner of the lands in controversy. In purchasing timber taken therefrom as agent of plaintiff, he purchased his own property, and upon discovering that fact his principal could repudiate the contract and sue at law for deceit, or in equity for rescission upon equitable principles; this without regard to the fairness or unfairness of the contract, or as to whether or not loss or injury resulted. Baird v. Ryan, 17 K. L. R. 1417; Tenmen v. Sayre, 8 K. L. R. 421; Donnelly v. Cunningham, 58 Minn. 376; Tewkesberry v. Sperman, 75 Ill. 187; Herringer v. Held, 29 Atl. (N. J. Ch.) 190.

It is shown that at the time of the contract the real value of the timber purchased was equal to either the represented value or to the contract price, so that in a

suit at law, whichever of these measures is adopted, as no actual damage is shown in the execution of the contract, the recovery in that respect could be but nominal. Drake v. Holbrook, 23 K. L. R. 1941; Ligon v. Minton, 125 S. W. 304; Acme Mills, etc. v. Johnson, 141 Ky. 718; Troendle v. Steger, 159 Ky. 182; Long v. Douthitt, 142 Ky. 427; Mosby v. LaRue, 143 Ky. 433; Salyer v. Blessing, 151 Ky. 459; Elsey v. Lamkin, 156 Ky. 836; LaRue v. Barbee, 184 Ky. 354.

In the above cases relief was sought from the effect of actual fraud. Aside from the fact that the contract would be avoided without proof of such fraud, the damage arising from the execution of the contract would be the same at common law in a suit to recover for constructive fraud as it would be in the former; though the subsequent relation of the parties might call for closer scrutiny for the discovery of any profits or commissions arising therefrom, all of which would be strongly condemned.

Turning to equity it has been well said: "The doctrine is not based on the idea that the transaction is necessarily an injury to or fraud upon the principal, but on the idea of closing the doors of temptation to fraud and keeping the agent's eye single to the rights and welfare of his principal." 21 R. C. L., page 830.

In other words, the relief is preventive as well as remedial, and in executory contracts the equitable remedy of cancellation is peculiarly applicable.

It is also applicable to executed or partially executed contracts, but as to such, if the purchased article has been delivered and possesses any value the general rule is that the remedy may not be invoked unless the purchaser returns the article or offers to do so and the parties may be placed *in statu quo*. Buford v. Brown, 6 B. M. 553; McCulloch v. Scott, 13 B. M. 172; Snyder v. Hogan, 19 K. L. R. 517; Ligon v. Minton, 125 S. W. 304; Summers Fiber Co. v. Walker, 33 K. L. R. 153; Culton v. Asher, 149 Ky. 659; Cole v. Young, 167 Ky. 600; Haus v. Surran, 168 Ky. 686; Williams v. Shepherd, 181 Ky. 535; R. C. L., pages 936-7; 9 C. J. L. P. 1207-8-9.

Summers Fiber Co. v. Walker, Culton v. Asher, *supra,* Cent. Life Ins. Co. v. Taylor, 164 Ky. 844, and Cole v. Young, 167 Ky 600, are relied on as establishing the principle that an equitable action of rescission can not be maintained except in cases of insolvency or where adequate relief cannot be obtained at law.

Here the contract has been fully executed and no preventive relief can be afforded and insolvency is not claimed, but the case has been practiced in a way that authorizes the chancellor to afford common-law relief if equitable relief is denied, hence a distinction between the two forms of action can only affect the remedy, and to this a later reference will be made.

The company received, reinspected, accepted and used the timber, and it cannot now be heard to say that it did not ascertain its quantity and quality and it must be deemed to have waived all objection to such matters. White, etc., Hat Co. v. Carson, 77 S. W. 366; Nelson, etc., v. Schrader, 19 Rep. 150; Kerr v. Smith, 44 Ky. 552; Jones Bros. v. McEwan, 91 Ky. 376; Bannon v. St. Bernard Coal Co., 18 Rep. 1050; Caldwell v. Drake, etc., 162 Ky. 272.

However, after the contract of sale, Headden continued to conceal from the company his relations to the real estate firm, and as it had a right to disaffirm the entire contract upon discovering his connection therewith, the fact that it had so accepted and retained the property would not bar an action for rescission. But it is urged by appellees that as the parties cannot be placed *in statu quo,* such action will not lie.

Appellant argues that if the logs had been on hand at the time it discovered Headden's interest in the real estate it could have tendered them back and had a cancellation of the contract, and a recovery of the consideration paid; that as the logs had been used in good faith, and it prevented by defendant's fraud from tendering them in *specie,* that it would be just and equitable tc credit the amount of the consideration paid by the value of the logs at the time of such discovery, or by their value at the time they were delivered to it, and for the court to cancel the contract and give it judgment for the balance.

So far as we are advised the exact question has not heretofore been presented to this court, although somewhat similar cases have arisen in other jurisdictions. In Bayse v. Poali Ref. Co., 79 Kan. 755, in a suit to cancel an oil lease it appeared that the plaintiff, lessee, had used some oil from a producing well subsequent to discovery of the alleged fraud and offered to credit the consideration by the value of it.

In reference to this question the court said:

"However, the rule that he who seeks rescission of a contract must restore in specie whatever he has received under it is one of justice and equity and not of procedure and must be reasonably construed and applied. All that is necessary is that the one party should be replaced in his original situation and that the other shall derive no unconscionable advantage from his conduct."

Wright v. Dickinson, 67 Mich. 580, was a suit at common law to recover consideration paid for a tract of timber to which the title had failed, and the seller was insolvent; the purchaser had cut and sold timber which could not be restored; it was said:

"The law does not require impossibilities to be performed. The only thing he can do is to restore its money equivalent, and that he offers to do. In cases where acting in good faith property has been so changed or lost that it cannot be restored in specie, and when its value is capable of being ascertained the party entitled to may rescind the contract, although he cannot place the other party *in statu quo*. That is the law of reason and therefore of justice."

In Herminger v. Held, *supra,* a cancellation and return of the consideration was awarded in a real estate case in which a tender could not be made. To the same effect is the text in 6 R. C. L., pages 38-9.

The exception to the rule is thus stated in Corpus Juris:

"If the defrauded person by reason of the wrongful conduct of the wrongdoer is rendered incapable of fully restoring the latter to his former position to that extent such restoration is not necessary to a rescission." 13 C. J. page 622 and cases cited; 19 C. J. 1209-10; O'Shea v. Vaughan, 201 Mass. 412.

If we concede the justice of this doctrine in exceptional cases it will be observed that in none of these cases did it appear that there was any fluctuation in value and no question was raised as to the time at which such valuation should apply. Cases may be found in

which it is held that where an animal in ordinary and customary use suffers from inherent vice while in possession of the defrauded person, or an article depreciates from such use or market decline that nevertheless such person may restore it upon discovery of the fraud, and while the other party may not be put entirely *in statu quo,* that this is sufficient tender to authorize a rescission. But our attention has not been called to any case holding that a party may be placed *in statu quo* by crediting him with the value of the article at a time subsequent to the execution of the contract.

As said in Summers Fiber Co., v. Walker, *supra*:

> "Generally the parties must look to an action in damages for a remedy. Rescission goes to the very root of the contract. It proceeds upon the theory that the contract should be entirely set aside and the parties restored to the position they occupied before the contract was made."

We are mindful that transactions of this character should be closely scrutinized and, as said in Neblett v. McFarland, 192 U. S. 101: "Parties engaged in a fraudulent attempt to obtain a neighbor's property are not the object of the special solicitude of the courts."

But, without expressing special solicitude for the defendants, we are unable to see that the plaintiff is entitled to the extraordinary relief it seeks. Considering the case in equity and assuming though not deciding that this is a case in which the value of the timber may be credited upon the consideration paid and cancellation adjudged, still the parties cannot substantially be restored to the position they occupied before the contract was made by paying the defendants one-half of the then value of their timber or in any way except by allowing the value thereof at that time.

It must be remembered that there was no actual fraud in the contract. Plaintiff was not overreached or induced to buy a spurious or inferior article or to enter a hazardous business, but it made its own plans, knew what it wanted and the general value thereof, and received, accepted and used the logs bought. While it may not have been advised of local prices and may have depended upon Headden for that, we have no doubt that at the time of the execution of the contract the timber was worth the purchase price, and while the contract

was a voidable one, it is clear that the losses, except as pointed out below, were occasioned solely by the market decline and not by the constructive fraud of Headden. The contract is fully executed and only a money recovery sought, so it seems to us that there is no difference between the relief afforded by law and that afforded by equity.

We conclude that Headden should have no commissions on the timber in question. The evidence as to the automobile transaction is conflicting and as the chancellor's opinion in this respect is entitled to consideration and given some weight we are not inclined to disturb it.

As to the 35,000 feet of logs purchased in August a different question is presented. Headden does not seem to have had any interest in them, but under the circumstances, we think the same rule that denies secret profits to Headden should be applied to Thompson & Parks. They knowingly participated in all the transaction, and while they are only liable for nominal damages for the timber sold in March, because the timber was worth the contract price, for the same reason they are liable for that purchased in August, as they made a profit thereon. We think the reasonable value of the timber so purchased is $75.00 per M. and as $25.00 per M. will cover their profits thereon, their counterclaim should be credited by the amount of timber so purchased at $25.00 per M. and judgment rendered in their favor for the balance, and the costs in the lower court.

Wherefore, the judgment is affirmed on the original appeal and on the cross-appeal of Headden and reversed on cross-appeal of Thompson and Parks, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.