### GRAHAM v. TOM MOORE DISTILLERY CO.
### No. 381.

District Court, W. D. Kentucky,
Louisville Division.
Dec. 24, 1941.

854

R. P. Hobson, of Louisville, Ky., for plaintiff.

Sydney Krause, Hyman Gold, and Krause, Hirsch & Levin, all of New York City, and Oldham Clarke, of Louisville, Ky., for defendant.

MILLER, District Judge.

This action is before me on the plaintiff's motion for a temporary injunction, and upon the defendant's motions (1) to dissolve a temporary restraining order entered without notice at the time of the filing of the action, and (2) to dismiss the complaint.

The action was filed at 11:15 a. m. on Saturday, December 6, 1941, by the plaintiff Thomas Graham, a minority stockholder of the defendant corporation, Tom Moore Distillery Company, and seeks to enjoin the defendant from entering into a contract for the sale of its whiskey with William Jameson & Co. Inc. The verified complaint alleged that the defendant would on Monday December 8, 1941, enter into the proposed contract in New York City, which if done would cause immediate and irreparable injury and damage to the plaintiff. A temporary restraining order was asked for and issued under the provisions of Rule 65 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which by its terms was to remain in force until 9 a. m. December 15, 1941, which time was set for the hearing upon the plaintiff's motion for a temporary injunction. On December 15, 1941, the motions above referred to were made by the respective parties and a hearing had, at which time did not permit as complete a presentation of the facts as desired by the parties. The temporary restraining order was continued in effect for an additional ten days with leave given to the parties to show additional facts by affidavit. The filing of the affidavits and briefs was completed on December 20th.

The facts, briefly stated, appear to be as follows: William Jameson and Company, Inc., a corporation engaged in the whiskey distributing business filed a petition for reorganization in the United States District Court for the Southern District of New York on April 21, 1941, at which time a Trustee in reorganization was appointed and qualified. No plan of reorganization has as yet been filed. On August 12, 1940, Jameson and Co. had entered into a contract with the defendant Tom Moore Distillery Company dealing with the marketing of the defendant's products by Jameson and Company. On August 2, 1941, after the petition in reorganization was filed, the Tom Moore Distillery Company notified Jameson's Trustee of its election to cancel the marketing agreement by reason of alleged breach of performance on the part of Jameson, which election to terminate was opposed by the Trustee. The Referee in Bankruptcy, to whom the matter was referred, has made a report to the Court that the Distillery Company should be permitted to terminate said agreement. This report has not as yet been acted upon by the Judge in the New York reorganization proceedings. On August 29, 1941, the Trustee acquired a majority of the stock of the defendant company and thereafter elected to the board four of its six directors, which four directors were employees of either the Trustee or his attorney. On December 1, 1941, Irving Haim, an employee of the Trustee in reorganization, made a written offer to the Trustee to purchase for a consideration of approximately $180,000 the stock of the Tom Moore Distillery Company which the Trustee owned, incorporating as a part of said offer the following provision:

"I agree, further, that I will insofar as I may have the power to do so, as a majority stockholder of Tom Moore, negotiate with you and your representatives to the end that a satisfactory case goods sales agreement may be entered into by and between Tom Moore and you, to supply you with Tom Moore cased goods."

It also provided that a consent judgment be entered terminating the marketing agreement between Tom Moore and Jameson dated August 12, 1940, to be retroactive to August 2, 1941, and that the Trustee procure the resignations of the four directors of Tom Moore elected by the Trustee, the resignations of the President and Vice President and to take such action as may be necessary to elect as successor directors and officers of Tom Moore such nominees as Haim should designate. In contemplation of the consummation of this sale of stock to Haim, the Trustee and Haim began negotiation for a new marketing agreement between the Trustee of Jameson and the Tom Moore Distillery Company. It is the execution of this proposed contract that the plaintiff seeks to have enjoined.

The initial draft of the proposed contract was mailed to counsel for the minority stockholders in Louisville on or about December 4th, 1941, with notice that a hear-

ing would be held in New York on December 8th, 1941. This action was filed on December 6th, based upon the terms contained in this initial draft. At the hearing on December 8th a modified form of contract was presented, and certain other changes made at the suggestion of the Court. The counsel for the minority stockholders attended the New York hearing, but participated personally very little, if any, in the hearing. The New York Court gave consideration to the objections voiced at the hearing by one of the directors, representing the minority interests and approved the proposed contract as finally modified.

■ This Court is of the opinion that the action of the New York Court on December 8, 1941, is not controlling in this litigation. It authorized the Trustee of Jameson and Co. to execute the contract, and such a ruling is binding upon Jameson and Co. and its creditors who are before that Court in the reorganization proceedings. It does not bind the minority stockholders of Tom Moore Distillery Company who are not before that Court. The essential question in that proceeding was the protection of the interests of William Jameson and Company and its creditors, and although the Judge in that Court very properly endeavored to also protect the interests of the stockholders of Tom Moore Distillery Company, yet those stockholders were not before the Court and have a right to their day in court in such proceedings as they are authorized to institute.

■ The defendant contends that this case is controlled by the well established rule of law which is stated as follows in the case of Venus Oil Corporation v. Gardner, 244 Ky. 176, 50 S.W.2d 537, 538: "The Court may not intervene or interfere in the internal affairs of a corporation at the instance of minority stockholders unless its governing authorities have acted or are threatening to act fraudulently, in the broad sense, against them or have abused the implied trust reposed in officers and directors in such manner or to such extent as to warrant the interposition of equity." See, also, to the same effect Manufacturers' Land & Improvement Co. v. Cleary, 121 Ky. 403, 89 S.W. 248; Haldeman v. Haldeman, 176 Ky. 635, 197 S.W. 376; Rice v. Thomas, 184 Ky. 168, 211 S.W. 428; Carter v. Louisville Ry. Co., 238 Ky. 42, 36 S.W.2d 836. It points out that the proposed contract is a fair and bona fide one entered into between the parties after full consideration and a

court hearing, that it contains no element of fraud, and that the only complaint which the plaintiff has is a difference of opinion between the minority stockholders and the directors which is not subject to review by the Court. The respective parties have devoted considerable time to pointing out the fairness or unfairness of certain provisions of the contract and of the contract as a whole. This Court feels for the purposes of the present hearing at least such arguments are beside the point.

■ The Court recognizes the existence and soundness of the rule of law above stated and relied upon by the defendant, but it also calls attention to the fact that it is equally well settled by many Kentucky decisions that a person occupying a fiduciary or confidential relationship can not lawfully acquire any private interest of his own in opposition to his position of trust, and that transactions between fiduciaries and cestuis que trust are constructively fraudulent. Hoge v. Kentucky River Coal Corp., 216 Ky. 51, 287 S.W. 226; Walker v. Carter, 208 Ky. 197, 270 S.W. 770; Clay v. Thomas, 191 Ky. 685, 231 S.W. 512; Louisville Point Lumber Co. v. Thompson, 202 Ky. 263, 259 S.W. 345. As an integral part of that broad principle of law it has also been held that public policy forbids an agent to act for his principal in a matter involving the agent's private interest, and that such a contract is void. Central West Casualty Co. v. Stewart, 248 Ky. 137, 58 S.W. 2d 366; Weatherholt v. National Liberty Ins. Co., 204 Ky. 824, 265 S.W. 311; King Construction Co. v. Mary Helen Coal Corp., 194 Ky. 435, 239 S.W. 799. The basic principle supporting this rule is well stated in Weatherholt v. National Liberty Ins. Co., supra [204 Ky. 824, 265 S.W. 312], as follows:

"The law has too much regard for the infirmity of human nature to allow a person to be subject to the temptation of acting as an agent in a matter in which he has an interest adverse to his principal. The law, dealing with the average integrity and disinterestedness, wisely assumes that no man can faithfully serve two masters, whose interests are in conflict."

That opinion also points out that a contract entered into under such conditions may be avoided by either party, and "the principal, not having authorized or ratified the acts of such agent, may repudiate the transaction, without regard to any question of actual fraud or of benefit or detriment

accruing to him from such acts." It thus appears that a contract entered into by parties under such conditions is either constructively fraudulent or absolutely void regardless of whether or not actual fraud can be spelled out of the express provisions of the contract.

In the present case Haim is an employee of the Trustee of Jameson and Co. and has been an employee of Jameson and Co. for some time prior to the reorganization proceedings. He is a half owner, governing director, and acting head of William Whitely, a British corporation which has a marketing contract with William Jameson and Co. for the distribution of Whitely Scotch whiskeys in America. Prior to April, 1941, he received a salary of $15,000 from William Jameson and Company which was reduced in April, 1941, to $10,000 a year. Haim's interests are linked very closely with Jameson and Co. and its successful reorganization. If that company is not successfully reorganized the future of William Whitely's Scotch whiskeys in America is seriously jeopardized. The record fails to show the comparative interests of Haim in William Whitely and in Tom Moore Distillery Co. after the acquisition of the Tom Moore stock, but it does present a strong presumption that his interest in William Whitely dominates any interest which he is thus acquiring in Tom Moore. This answers defendant's contention that Haim's interest in Tom Moore of approximately $180,000 dominates Haim's interest in his salary from Jameson and Co. of $10,000 a year. It is also to be noted that the major portion of the $180,000 purchase price is to be borrowed money from Haim's partner in William Whitely, and that the record shows it is very important to the successful reorganization of Jameson and Co. that it continue to hold a marketing agreement with the Tom Moore Distillery Company. The four new directors of Tom Moore are to be Haim's nominees. It is well settled that a director holds a position of trust with the corporation and its stockholders. Covington & L. R. Co. v. Bowler's Heirs, 9 Bush, Ky. 468; Haldeman v. Haldeman, 176 Ky. 635, 197 S.W. 376; Venus Oil Corp. v. Gardner, 244 Ky. 176,

50 S.W.2d 537. Under the circumstances in this case this mantle of trust certainly falls upon Haim as well as upon them. Haim can not direct them to enter into a contract which involves his own private interest to such an extent that it possibly and even probably overshadows his interest in the Tom Moore Distillery Company. Under the rule above stated such a contract is void as against public policy, without it being necessary to show actual fraud.

The proof on this hearing leaves with the Court a strong feeling that it is necessary for the successful reorganization of William Jameson and Company that such a contract with Tom Moore Distillery Company as is here proposed be consummated, and that the primary purpose of the proposed contract is to accomplish that result. While the parties propose to be fair with Tom Moore, yet its future success is subordinate to the effort to accomplish a successful reorganization of Jameson and Company. Certain commitments on the part of Jameson and Co. appear to exist which can not be properly taken care of in the absence of such a contract negotiated through Haim. The sale of the stock to Haim and such a proposed arrangement came from those who are primarily interested in the reorganization proceedings (Transcript of evidence, Pages 13 through 16), and the offer of Haim to buy the stock and the proposed contract with the defendant company have been negotiated over a period of a few days with counsel working at top speed at nights and on Sundays to put it into effect as quickly as possible. It is also to be noted that Haim's offer of purchase commits him to the negotiating and execution, in so far as he has the power to do so, of such a contract. These facts in themselves go a long way towards negativing the idea of a contract freely entered into between the parties dealing at arm's length.

The defendant's motions to dismiss the petition and to dissolve the restraining order are overruled and the plaintiff's motion for a temporary injunction is sustained. The amount of the bond as previously set appears to be adequate under the circumstances.